The order appealed from struck out this paragraph in so far as it reiterated the allegations in paragraph 1, "with the exception of the denial that the publication was malicious." The defendant, by incorporating in this paragraph the general denial contained in the first paragraph, prevented the plaintiff from demurring to the separate and partial defense, and in no way did such repetition benefit the defendant. If the denials contained in the first paragraph were good, they were good for every purpose at the trial, and were just as effectual as though repeated in the separate and partial defense. This allegation therefore was irrelevant and redundant. The retention of it might injure the plaintiff, and the striking of it out could not, by any possibility, injure the defendant. Stieffel v. Tolhurst, supra; State of South Dakota v. McChesney, 87 Hun, 293, 34 N. Y. Supp. 362.

It follows, therefore, that the order appealed from must be modified as herein indicated, and, as thus modified, affirmed, without costs to either party. All concur.

---

(91 App. Div. 141.)

GALLENKAMP v. GARVIN MACH. CO.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. MASTER AND SERVANT—EMPLOYMENT OF MINORS—DANGEROUS MACHINERY.
    It cannot be said as a matter of law that a conveyor consisting of an endless chain with metallic pan-shaped shelves about every 13 feet, moving about a foot a second, used for carrying tools from one floor to another of a factory, is not a dangerous machine, within Laws 1897, p. 480, c. 415, § 81, providing that children under 16 years of age shall not be permitted to assist in operating dangerous machines of any kind.

2. SAME—OPERATING.
    One who attends, on a floor of a factory, a machine for conveying articles from one floor to another, assists in operating it within Laws 1897, p. 480, c. 415, § 81, providing that children under 16 shall not be permitted to assist in operating dangerous machines.

3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.
    Whether a boy 15 years old, attending a machine for conveying tools from one floor to another of a factory, in trying to prevent tools from falling in the shaft, was guilty of contributory negligence in placing his head in the shaft, where the shelves of the machine were moving about a foot a second, so that he was struck by one, was a question for the jury.
    Ingraham and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Gustav Gallenkamp, Jr., by his guardian ad litem, against the Garvin Machine Company. From a judgment in favor of defendant pursuant to an order granting a motion for a nonsuit at the close of plaintiff's case, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Alexander Rosenthal, for appellant.
Franklin Pierce, for respondent.

LAUGHLIN, J. This action is brought to recover damages for personal injuries sustained by the plaintiff through the negligence of the defendant. The action is predicated upon a violation of section

81 of the labor law (Laws 1897, p. 480, c. 415), which provides that "children under sixteen years of age shall not be permitted to operate or assist in operating dangerous machines of any kind." The defendant was a manufacturer of tools and machinery, and its plant was in the city of New York. The building consisted of eight floors. A machine known as a "conveyor," operated by mechanical power, was used by the defendant for the purpose of carrying tools to and from the different floors. It was constructed in a shaft extending from the bottom to the top of the building. The walls of the shaft were three inches in thickness, consisting of steel laths with plaster upon either side. The conveyor consisted of endless chains, passing over sprocket wheels 18 inches in diameter located at the top and basement of the building, with pan-shaped metallic shelves about 3 feet in length attached to and suspended between the chains at intervals of about 13 feet. The conveyor was in constant motion during business hours. There were two openings in the shaft at each floor, one opposite the ascending pans and the other opposite those descending for the purpose of putting on and taking off tools. These openings were about 18 inches above the floor, and were 3 feet wide and 46 inches high, and had doors by which they could be closed when not in use. The conveyor moved at the rate of about one foot per second. On or about the 3d day of June, 1902, the plaintiff applied to the defendant for employment. He was accompanied by his father, who, in answer to an inquiry by the superintendent as to the boy's age, said he had "just turned fifteen," which was the fact. According to the plaintiff's testimony the superintendent refused to employ him unless a certificate was obtained from the board of health to the effect that he was 16 years of age; and upon a misrepresentation of the facts such a certificate was obtained and presented, and the plaintiff was employed. For seven days he worked in the tool room on the third floor under one Herman Lehr. On the eighth day Lehr directed him to attend the conveyor on the fourth floor, on account of the absence of the boy who regularly attended it. This was his first experience at that work, and he had received no warning as to the danger or instructions as to the safe method of performing the duties thus assigned. There were from 50 to 75 mechanics working on that floor. After plaintiff had been working at the conveyor four or five hours, one of the employés came over with five tools to be sent to another floor, and requested plaintiff to "hurry up and get these checks for these tools." Their system was to have slips accompany the tools to be receipted and returned. The plaintiff testified that he immediately filled out such a slip, and proceeded to put the tools upon one of the pans of the descending conveyor; that two of the tools, just as he got them in the pan, fell over the side, and "I made a grab for them to catch them, but they were too far gone, and just then the pan came down and caught my head between the pan and the landing." It appears that there was a space of about six inches between the edge of the pan and the side of the shaft toward the plaintiff. The plaintiff admitted that he knew that if he put his head far enough into the opening to be within range of these passing pans he was liable to receive injuries.

The respondent seeks to sustain the judgment upon three grounds: (1) That this was not a dangerous machine; (2) that the plaintiff was neither operating nor assisting in operating it; and (3) that the plaintiff was guilty of contributory negligence as matter of law.

I think it cannot be said as matter of law that this was not a dangerous machine within the contemplation of the statute. It was a mechanical contrivance, in constant motion, and propelled by practically irresistible mechanical power. The plaintiff was obliged to remove the tools from a pan while it was passing this opening of less than four feet, which would take only about four seconds, and likewise he was obliged to load a pan while it was passing the same distance. Although the conveyor did not move with great rapidity, yet it is manifest that the work was attended with danger, and the safety of the operator required that he should be of sufficiently mature judgment to keep his mind constantly upon the work. In the case of Hindle v. Birtwhistle, 1 Q. B. (1897) 192, in sustaining a conviction for a violation of the factory act of England for neglect to properly guard dangerous machinery, where the question arose as to whether the machinery was dangerous, it was said, "Machinery or parts of machinery is or are dangerous if in the ordinary course of human affairs danger may be reasonably anticipated from the use of them without protection."

I am also of the opinion that the plaintiff was assisting in the operation of this machine. Strictly speaking, perhaps the person who applied the power to set the machinery in motion was the operator; but the mere operation of the machine without the agency of the employés upon the different floors would have been fruitless. It was intended as a time-saving device, and to render its operation effectual required the assistance of employés upon the different floors. Those thus engaged were clearly, I think, assisting, at least, in operating the machine within the fair intent and meaning of the statute.

The question of contributory negligence was, in my opinion, one for the consideration of the jury. In the case of Marino v Lehmaier, 173 N. Y. 530, 66 N. E. 572, 61 L. R. A. 811, where a boy 13 years of age employed in a factory in violation of another provision of the labor law prohibiting the employment of children under the age of 14 years in factories, was injured by the starting of a cogwheel while he was cleaning a press. The Court of Appeals held that the mere employment of the plaintiff in violation of the statute was evidence of negligence on the part of the defendant sufficient to take the case to the jury, and that the statute amounted to a legislative declaration that children under 14 years of age, in accepting employment and performing duties assigned to them in violation of the law, were not of sufficient age and discretion to be deemed guilty of contributory negligence as matter of law. The prohibition against the employment of children under 16 years of age in the operation or assisting in the operation of dangerous machinery requires the same construction. The Legislature, although it saw fit to permit the employment of children over 14 and under 16 years of age in factories, deemed it necessary to prohibit their employment in operating or assisting in the operation of dangerous machines. It is evident that the Legislature appreciated that children between

those ages are apt to be thoughtless and absent-minded, and to have their attention diverted from work, and therefore are liable to injury if working on dangerous machines. The effect of the Court of Appeals decision in the Marino Case is that contributory negligence, even in such case, relieves the employer of liability, but that it is a question for the jury whether or not the infant was guilty of contributory negligence. Doubtless, if it appeared that the plaintiff, at the time realizing and appreciating the danger, heedlessly thrust his head in the path of the descending pans, it would be contributory negligence as matter of law; but that is not this case. The plaintiff was injured while attempting as best he could to perform the duties assigned to him. It was for the jury to say whether at the time he appreciated and realized the danger, and, if so, he would be guilty of contributory negligence; but, if not, they would be justified in finding freedom from contributory negligence on his part. The case of Monzi v. Friedline, 33 App. Div. 217, 53 N. Y. Supp. 482, was decided long before the decision of the Court of Appeals in the Marino Case, and it is unnecessary to decide now whether it is affected by the latter, for there the plaintiff was 17 years of age, and, while the decision went upon the assumption that greasing a cable to an elevator, which he was operating, was cleaning machinery, and within the prohibition of the statute forbidding the employment of males under 18 years to clean machinery while in motion, yet there the plaintiff had control of the motion of the elevator and cable; and the motion which caused the injury was his own act, and he was deemed clearly negligent as matter of law.

It follows, therefore, that the judgment must be reversed, and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

INGRAHAM, J. (dissenting). The plaintiff, a boy 15 years of age, was employed by the defendant in its factory, and while thus employed sustained the injuries for which he seeks to recover in this action. The complaint alleges that on the 10th day of June, 1902, and prior to that time, the defendant was engaged in making and selling machinery and tools, and was the owner of the plant, machinery, and other appliances in said trade in the building at the corner of Spring and Varick streets, in the city of New York, and was managing, running, and conducting the said business and plant, machinery, and tools, "among which was a certain conveyor, used to carry tools from the stockroom to any floor of said building desired, running in a wooden shaft, with swinging shelves hung from chains thereon, and that said conveyor was inherently dangerous, and was an unsafe place to work, and was not properly guarded or screened, and that all these things were known to the defendant long prior to June 10, 1902"; that on the 10th day of June, 1902, while the plaintiff was working in the toolroom in pursuance of an agreement between the defendant and the plaintiff's father, "the defendant, without instructing him as to the dangers and nature of the conveyor aforesaid, and knowing full well that the said Gustav Gallenkamp, Jr., had never before operated any machine, and was wholly unfamiliar with the said conveyor, requested him to leave his proper em-

ployment, and to operate the conveyor on the fourth floor of the said building, in violation of paragraph 81 of the labor law, being chapter 415 of the Laws of 1897, as amended by chapter 192, p. 350, of the Laws of 1899, and in violation of the agreement" before referred to; that while so employed on said conveyor, without any negligence or fault on his part contributing thereto, one of the swinging shelves of the said conveyor struck the head of the plaintiff, causing a fracture of the base of the skull and other severe injuries.

The right of the plaintiff to recover, therefore, was based upon a violation of section 81 of the labor law. The provisions of this law which regulate the employment of infants are contained in article 6 of the act. This article regulates the employment of minors and women, and contains general provisions for the protection of employés in factories and in the operation of machinery, elevators, and hoisting shafts. In relation to the employment of minors, section 70, p. 477, provides that "a child under the age of fourteen years shall not be employed in any factory in this state." This is a positive prohibition, a violation of which is a misdemeanor, and is evidently based upon the assumption that no child under the age of 14 years is competent to do the work required of an employé in a factory without injury to the child or danger to his co-employés. The Legislature having expressly prohibited the employment of any child under the age of 14 years in a factory, the employment of a child under that age is at least evidence of negligence which would entitle the child to recover any damages sustained in the employment, the negligence being in the employment of the child in a factory in violation of the statute. It is entirely immaterial to what work the child so employed is put, as the employment of a child in a factory is a violation of the statute, and is thus at least presumptive evidence of the negligence upon which an action to recover for an injury to the child employed in violation of its provisions is based; and in such case negligence of the child in operating the machinery which caused the injury would not defeat the cause of action. It is the employment of a child in a factory in violation of the statute that is the wrongful act which imposes the liability; and, unless the minor can be said by his negligence to have contributed to the act of employment, the question of contributory negligence is not involved. There can be no liability of the defendant predicated upon this section, however, as it is conceded that the child was over 15 years of age at the time of employment and at the time of the injury.

Section 79, p. 479, of the labor law, regulates the inclosure and operation of elevators and hoisting shafts, and provides that "no child under the age of fifteen shall be employed or permitted to have the care, custody or management of, or to operate an elevator in a factory; nor shall any person under the age of eighteen be employed or permitted to have the care, custody or management of or to operate an elevator therein running at a speed of over two hundred feet a minute." Here is the regulation prescribed by law for the operation of elevators and hoisting shafts. But this section was not violated, as the plaintiff was over the age of 15 years at the time of the accident.

The only other provision of the article which can apply is the one a violation of which is alleged in the complaint as the ground of the plaintiff's right to recover which is section 81 of the act. That section is headed, "Protection of Employees Operating Machinery," and it provides that the owner or person in charge of a factory where machinery is used shall provide certain belt shifters or other mechanical contrivances for throwing power off or on belts or pulleys. Provision is then made for properly guarding machinery, and for the proper lighting of halls and stairways leading to workrooms; and then comes this provision, relied on by the plaintiff:

"No male person under eighteen years of age or woman under twenty-one years of age shall be permitted or directed to clean machinery while in motion. Children under sixteen years of age shall not be permitted to operate or assist in operating dangerous machinery of any kind."

We have here the legislative scheme to provide for the safety of minors employed in a factory; and in construing this provision of section 81 it is evident that all of the provisions of this article of the labor law relating to the employment of minors must be read together. No child under 14 years of age is to be employed in a factory; no child under 15 years of age is to be employed or permitted to have the care, custody, or management of or to operate an elevator in a factory; and no child under 16 years of age is to operate or assist in operating dangerous machinery of any kind. If it had been considered that an elevator or hoisting shaft was a dangerous machine, the prohibition of section 81 of the labor law would have applied, and section 79 would have been entirely unnecessary. It was considered essential to provide for the safety of employés in factories, that the management or operation of such an elevator or hoisting shaft should be absolutely prohibited for a minor under 15 years of age; and it would seem to follow that for a minor over 15 years of age such employment was subject to the general provisions that the elevator or hoisting shaft should be kept in proper order, and that the requirements of the law should be complied with. In other words, a child over 15 years of age was put in the same grade as an adult, so far as the operation of an elevator or hoisting shaft was concerned; and the provisions of section 81 which prohibit an employer from allowing a child under 16 years of age to operate any dangerous machinery must be read in connection with these two former provisions of the statute which provide a limitation under which no child shall manage or operate an elevator or hoisting shaft. To hold an employer liable for an injury happening to a child over 15 years of age who was operating an elevator, it was necessary to show that, in addition to its being an elevator or hoisting shaft, its use was subject to some danger not usual to such appliances. The prohibition is against allowing a child under 16 years of age to operate or assist in operating dangerous machines of any kind. The difference between this prohibition and that contained in section 79 of the labor law is apparent.

If the plaintiff had been under 15 years of age, his employment in relation to this elevator or hoisting shaft would have been a violation

of section 79 of the labor law. When the Legislature prohibited the employment of children under 16 years of age, it restricted the prohibition to the operation of a dangerous machine. "Operate" is defined by the Standard Dictionary as "to put in action and supervise the working of, as to operate a machine"; and in the Imperial Dictionary "to put into or to continue in operation; to work, as to operate a machine." Thus by a strict definition the meaning of the phrase "operating a machine" would be to work the machine, or, in other words, to regulate and control its management and operation; and this phrase is used in the statute in connection with section 79 of the labor law, which allowed a minor of 15 years and upwards to be employed in the care, custody, management, or operation of elevators.

To make the defendant liable for this accident, therefore, it must appear that the plaintiff was directed or allowed to operate a dangerous machine, as distinguished from the ordinary use of an elevator or hoisting shaft. I suppose that no machine in motion can be imagined which would not occasion personal injury to one who placed himself in its way. Elevators and hoisting shafts are in common use in almost every building; and it requires but little care to avoid injury so long as they are kept in proper order and carefully managed. If any one exposed his person to the inside of a shaft in which there is a moving elevator, of course an injury would follow; but still it could not be said that because of the possibility of such a contingency an elevator is a dangerous machine, or that one employed in using it was engaged in operating a dangerous machine. It seems to me that the provision applies only to a machine which is liable, from the very nature of the work that it does, to cause injury to those engaged in its operation. A machine that would not be dangerous if operated by a person skilled in its management would be a dangerous machine for one not so skilled. But an elevator which the statute allows a child of 15 to operate, and which requires only the care of an ordinary and prudent person to be perfectly safe, is not, as I view it, a dangerous machine within the meaning of this provision of the statute.

I have discussed this statute without reference to the authorities, because I do not find that the question as to the construction of section 81 of the labor law has been considered in any of the cases to which our attention has been called. In Marino v. Lehmaier, 62 App. Div. 43, 70 N. Y. Supp. 790, affirmed 173 N. Y. 530, 66 N. E. 572, 61 L. R. A. 811, the question was as to the liability of the defendant, who had employed an infant in violation of section 70 of the labor law; and it was there held that the fact that the infant requested or consented to such an employment was not contributory negligence that would interfere with his recovery. In the Court of Appeals, Judge Haight says:

"A child under the age specified presumably does not possess the judgment, discretion, care, and caution necessary for the engagement in such a dangerous avocation, and is therefore not, as a matter of law, chargeable with contributory negligence, or with having assumed the risk of such employment in such occupation."

The chief judge, in a concurring opinion, says:

"The statute amounts to a declaration by the state that the employment of children under fourteen years of age in a factory is so far neglectful of their lives and limbs as to make it the duty of the state, in the exercise of its police power, to forbid such employment, and enforce its command by penalties. * * * But the defendant disregarded the law, and employed and gave directions to one of the subjects of the state in violation of the state's policy, and the outcome of it was an injury to the child, which could not have happened had the law been observed."

But what was said in that case related to the employment of a child which was absolutely prohibited by the statute. Here we have a child who was employed in putting upon an elevator or hoisting shaft tools for use in other parts of the building, an employment which, if the child had been under the age of 15 years, would have been absolutely prohibited by section 79 of the labor law, but which, as he was over 15 years of age, was allowed by that section. The plaintiff testified that he was over 15 years of age; that when he was employed he was put to work on the third floor of the building in a place called the "toolroom"; that after he had been there eight days one Lehr, in charge of the toolroom, sent him upstairs to work on what was called a "conveyor"; that when tools were needed a brass check was given, which was put upon the conveyor to be sent to the floor upon which tools were stored; that the tools called for by this check were those sent on the conveyor to the floor where they were required, and subsequently returned to the toolroom in the same way; that this conveyor had two openings from the shaft into the room, about four feet from the floor, and the rest of the conveyor was inclosed; that the plaintiff was on the side of the shaft where the pans go down; that there was another boy on the other side of the shaft where the pans go up; that, after plaintiff had been at work in this way for four or five hours, a man came to him, and gave him five tools, and said, "Hurry up and get the checks for these tools"; that he went over to the conveyor, made out a slip for the tools, and the number of the check was to come back in their place; that he went to put them on the pan, and as he got them in the pan two of the tools fell over; that he made a grab to catch them, but they were too far gone, and just then a pan came down and caught his head between the pan and the landing; that as he made a grab for the tools he stuck his head in the shaft, and the injury was occasioned by his putting his head into the shaft of the elevator. A photograph of this elevator was introduced in evidence by the plaintiff, which quite plainly shows its construction. The opening was inclosed with iron doors, which, when opened, would admit one standing upon the floor to place tools or other articles on the pans as they ascended or descended, and the only way that a person could possibly be injured was by putting some part of his body into these openings so as to be struck by a pan as it ascended or descended. These pans were moving slowly, and all that the plaintiff had to do in the operation of this conveyor was to put the tools upon the pan as they went down to be taken off by the boy upon the floor below. He had no control of the management or operation of this machinery; nothing to do with starting it up or stopping it; did not in any way control its

operation. It was not out of repair in any way. The constructor of this conveyor was called by plaintiff, and testified that the opening of the conveyor was 36 inches wide and 46 inches high, and the distance between the pans was 13 feet; that these pans traveled 12 feet in 11 seconds; that the distance between the outside of the pan and the side of the shaft was 6½ inches. Thus from the plaintiff's evidence it appeared that this conveyor was perfectly safe so long as a person using it did not place some portion of his body inside of the shaft between the pans, and keep it there for a sufficient length of time to allow the succeeding pans to strike him. It seems to me clear that this was not a dangerous machine as distinguished from an ordinary elevator or other moving machine used in a factory. The knowledge required to safely operate it was only that common knowledge that every one has in using machinery at all. Nothing was required for perfect safety except to keep out of the shaft, and as the defendant was authorized under section 79 of the labor law to employ the plaintiff about this elevator, and as I think it apparent that the machine was not a dangerous machine, as distinguished from elevators and other moving machines in ordinary use in a factory, the defendant was not guilty of a violation of section 81 of the labor law. A witness who was called for plaintiff testified that he had stuck his head in this shaft and had been hit by the pan, and that he knew of another boy who had likewise stuck his head in this shaft and had also been hit; but there is no evidence that notice of these accidents had ever been called to the attention of the owners of the factory, or any one in authority, and it is entirely clear that such an accident was one necessarily caused by a voluntary and unnecessary exposure of the person, which, as in the case of the plaintiff, was the cause of an injury, and not from the nature of the machine itself. The accident therefore happened, as I view it, not because of a violation by the defendant of any duty which it owed to the plaintiff, either under the labor law, or under the general rule regarding the employment of employés, but by a voluntary and unnecessary exposure by the plaintiff, which the slightest care would have prevented, and for which the defendant is not responsible.

I think, therefore, that the dismissal of the complaint was correct, and that the judgment should be affirmed, with costs.

McLAUGHLIN, J., concurs.