GENOVESIA v. PELHAM OPERATING CO. et al.

(Supreme Court, Appellate Division, First Department. January 22, 1909.)

1. MASTER AND SERVANT (§ 129*)—INJURY TO SERVANT—CAUSE OF ACCIDENT.
 Failure to comply with Labor Law (Laws 1897, p. 468, c. 415), § 20, as amended by Laws 1899, p. 350, c. 192, providing that the contractor or owner of a building in course of construction shall inclose the elevator shaft on each floor, was not the cause of the injury, and so does not authorize recovery where, as an employé of the contractor was removing a wheelbarrow from the elevator, on the ninth floor, and while he was still on the elevator, the elevator suddenly descended to the fourth floor, when it was suddenly stopped, and the employé was thrown off and into the cellar.
 [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 129.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. MASTER AND SERVANT (§ 301\*)—EXISTENCE OF RELATION.**

For the purpose of carrying up building materials in a building in the course of construction, there was installed by P., under contract with V., a contractor for part of the work on the building, elevators under the charge of one of P.'s engineers. P., by its contract, furnished the engine and elevators and the engineer to operate them, for which it received payment from V. *Held,* that the engineer was not the servant of V., so as to render it liable for his negligence, though under said contract his time was kept by V. and turned over by it to P., and after P. had paid him for his services, according to the time so reported, V. repaid P. the amount so paid.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 301.\*]

**3. NEGLIGENCE (§ 55\*)—INJURY TO THIRD PERSON—DUTY OWED.**

Where P., under contract with V., the contractor for work in erection of a building, installs and operates elevators in the building for raising building materials, P. owes to the employés of V. the duty to use reasonable care in the operation of the elevators not to injure them.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 55.\*]

**4. APPEAL AND ERROR (§ 1173\*)—NECESSITY OF REVERSAL AS TO BOTH DEFENDANTS.**

Though there was evidence on which defendant P. could have been found liable for the accident, on the ground of negligence of its engineer in operating an elevator, yet the question of the liability of defendants P. and V. on another ground having been improperly submitted, the judgment against both must be reversed, not only as to V., but also as to P.; it being impossible to say on what ground the verdict against P. was based.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1173.\*]

Appeal from Trial Term.

Action by Rosario Genovesia, administratrix, against the Pelham Operating Company and another. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendants appeal. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Frank V. Johnson, for appellants.
William E. Weaver, for respondent.

INGRAHAM, J. The plaintiff's intestate was in the employ of the defendant George Vassar's Son & Co., who was engaged in constructing a building in the city of New York, and while thus employed he sustained injuries which resulted in his death. His administratrix served notice on the George Vassar's Son & Co. under the employer's liability act (chapter 600, p. 1748, Laws 1902), stating that the deceased was caused and permitted to fall from an open, unguarded, and unprotected elevator through an open, unguarded, and unprotected elevator shaft, hoist, or hatchway, caused by the elevator or hoist being started while the deceased was removing a pillar therefrom. No notice seems to have been served upon the Pelham Operating Company. The plaintiff subsequently commenced an action against both defendants, alleging that the accident which resulted in the death of the decedent was caused by the concurring negligence of the defendants, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after a trial there resulted a verdict against both defendants, upon which judgment was entered, and from which each of the defendants separately appeal.

On the trial it appeared that the defendants the Vassar company, who were the employers of the decedent, were the contractors for the masonwork for a building, and at the time of the accident were constructing the walls, which had reached the ninth floor. To carry the building materials from the ground to the several floors at which it was needed, the defendant the Pelham Operating Company had, under a contract with the Vassar Company, installed elevators in the building, which were under the charge of one of the Pelham Company's engineers. There were two elevators running side by side through an opening left for that purpose; the cars taking up the whole of the opening with the exception of a space of about a foot between the two elevators. Under the contract the time of this engineer was kept by the employés of the Vassar Company, which was turned over to the Pelham Company, and the Pelham Company paid the engineer for the time that he was at work as appeared from these reports, and subsequently, under the contract, that money was paid to the Pelham Company by the Vassar Company. At the time of the accident but one of these elevators was in operation. These elevators consisted of open platforms upon which were placed wheelbarrows filled with material to be hoisted up; there being room for two wheelbarrows upon each elevator platform.

On the morning of February 21, 1908, about half past 8 o'clock, two wheelbarrows, one loaded with mortar and the other with brick, were placed upon this elevator in the cellar, and the elevator was then hoisted to the ninth floor. It was the decedent's duty to remove the wheelbarrows from the elevator and wheel them to the points at which the material was needed. After the elevator arrived at the ninth floor, the deceased stepped upon the elevator platform and took hold of the handle of the wheelbarrow to wheel it off the platform to the floor of the building. The wheel of the wheelbarrow was on the floor, but before he had time to step off the platform the elevator suddenly descended, upsetting the wheelbarrow, which, with its contents, went down the shaft. The elevator descended to about the fourth floor when it was suddenly stopped, and the deceased was thrown off the platform into the cellar, receiving injuries which caused his death. It appeared that a rope was provided which ran up the elevator shaft and was connected with a bell near the engine. One stroke of this bell indicated that the elevator was to be raised, and two strokes that it was to be lowered. The negligence charged against the defendants was a violation of Labor Law (Laws 1897, p. 468, c. 415), § 20, as amended by Laws 1899, p. 350, c. 192, in failing to maintain the guards required around the elevator shaft, and that the defendants were responsible for the negligence of the engineer in charge of the engine.

So far as the verdict is based upon a failure to guard the elevator shaft, it is quite apparent that such negligence, if it existed, was not the cause of the accident. The deceased did not fall down the elevator shaft from the floor of the building, but was on the elevator platform, and the accident was caused by the sudden descent of the elevator plat-

form before he had removed the wheelbarrow from it to the floor of the building. The object of the statute is to prevent workmen engaged in building operations from falling down elevator shafts from the various floors of buildings in course of construction, and not to prevent a person falling off an elevator platform, as a guard around the shaft could be no possible protection to a person upon the platform of the elevator. Section 20 of the labor law (chapter 415, p. 468, of the Laws of 1897), as amended by Laws 1899, p. 350, c. 192, provides that the contractor or owners of the building in course of construction shall cause the shaft or openings in each floor to be inclosed or fenced in on all sides by a barrier at least eight feet in height, except on two sides, which may be used for taking off and putting on materials, and these sides shall be guarded by an adjustable barrier not less than three nor more than four feet from the floor, and not less than two feet from the edge of such shaft or opening. And undoubtedly a failure to comply with this law would be evidence of negligence which would justify a recovery by any person injured because of a failure of the contractors or owners to comply with its provisions; but, where the failure to construct these guards or barriers have no relation to the accident, such failure to comply with the law imposes no liability upon the defendant, except the penalty provided by the statute itself. The verdict against the defendants therefore cannot be sustained because of a failure to erect these barriers.

The only other negligence of which there is any proof is the negligence of the engineer in starting this elevator without having received any signal that it was to be lowered. It is quite clear, I think, from the evidence, that the Vassar Company was not chargeable with negligence of this engineer. He had been in the employ of the Pelham Company for years, and was furnished by it in connection with the engine which operated the elevators, which it also supplied. The contract between the Pelham Company and the Vassar Company was not introduced in evidence, but sufficient appears to show that the Pelham Company furnished the engine and elevators and the engineer to operate them, for which it received payment from the Vassar Company. It is quite clear that this did not constitute the engineer the servant of the Vassar Company. From the evidence as it stood therefore we think that there was no negligence of the Vassar Company to justify a recovery, and the complaint as to it should have been dismissed.

There then remains the question as to whether the accident was caused by the negligence of the engineer in charge of the engine, and whether the Pelham Company was chargeable with such negligence. It is quite apparent that this accident was caused solely by the lowering of the elevator while the deceased was in the act of removing the materials upon it. So far as appears, these elevators were safe appliances for the purposes for which they were used, if carefully operated; but any sudden starting of the elevator while the workmen were engaged in removing materials from them was an act from which the occurrence of an accident was quite probable. The method adopted of giving the signal to move the elevators would seem to have been a safe one, if the engineer did not move the elevator until he received the proper signal, and the negligence of the engineer depended upon

his lowering the elevator without a signal. The engineer was called as a witness for the plaintiff, and on cross-examination testified that he received a signal of two bells before he started the elevator. There was evidence of two workmen in the cellar, whose duty it was to load this elevator, and who were waiting near the engine for it to come down, that no such signal was given.

When a corporation furnishes appliances of this kind for use in a building under a contract with those engaged in constructing it, it certainly owes a duty to the person with whom it has made the contract and to those in his employ to use reasonable care in the operation of an elevator to avoid injuring those for whose benefit the appliances are furnished, and, if negligent in such operation of the appliances, a cause of action arises in favor of a plaintiff injured by such negligence. In this case the negligence was that of the engineer who was operating the elevator. The engineer was an employé of the Pelham Company. His services had been furnished by the Pelham Company to operate its engine and elevators, and he certainly remained a servant of the Pelham Company, who had employed him and could discharge him, and who paid him his wages. The fact that the Vassar Company subsequently repaid the amount that the Pelham Company had paid for the services of its employé did not make the engineer the servant of the Vassar Company or change the relation between the Pelham Company and the engineer. He still remained an employé of the Pelham Company, and for his negligence the Pelham Company was responsible. The only question in the case was whether the engineer in the employ of the Pelham Company was guilty of negligence that was the proximate cause of the accident, and that depended entirely upon the question of whether the elevator was moved without the proper signal being given.

After all the testimony was in, and after the defendants had severally moved to dismiss the complaint, which motions had been denied, the court in its charge to the jury stated that it was claimed that the elevator was operated by the Pelham Operating Company, and that the elevator car was negligently started, without notice or warning of any kind to the deceased, that both defendants failed in their duty to deceased, and that their concurring negligence was the proximate cause of his death. Having thus fairly stated the question to the jury, the court then read section 20 of the labor law, which had nothing to do with the negligence of the engineer, and the violation of which had nothing to do with the accident. Nothing more was said in the main charge about the negligence of the engineer. The defendants then requested the court to charge:

"There is no evidence in the case to warrant a finding that any failure to have guards, barriers, or fences, as required by the statute, was the proximate or a contributing cause to the accident and resulting injuries to the plaintiff's intestate."

That the court refused to charge, and to that both defendants excepted. The court had said to the jury:

"The nature and character of that place have been testified to, and I submit it to you, as a question of fact, whether the barriers provided—there were certain barriers provided—were or were not a compliance with the

law, and whether or not it was a reasonably safe place to work. If both defendants were negligent, and their concurring negligence was the proximate cause of the death of plaintiff's intestate, both may be liable; but, if the negligence of but one of the defendants was the sole proximate cause of the death, then that defendant alone would be liable."

And this was said in connection with the provisions of section 20 of the labor law, which had been read to the jury. The defendants then united in the request to the court to charge that there was no evidence in the case to warrant a finding that any failure to have guards, barriers, or fences was a proximate or contributing cause of the accident and resulting injuries to the plaintiff's intestate. I think that that was plainly the law, and that each and both of the defendants were entitled to have that question, to the effect of a failure to provide these barriers, taken from the jury. The result of the refusal of this charge was to leave it to the jury to determine whether or not one or both of these defendants was liable because of a failure to provide barriers required by the labor law. We cannot tell but what the jury might have found both of these defendants liable because of some assumed obligation of both defendants to comply with the statute, and under the charge of the court that is the only ground upon which both defendants could have been liable, as the Vassar Company was not liable for the negligence of the engineer, and the court had not submitted any question to the jury which would have justified them in finding a verdict against the Vassar Company on account of the negligence of the engineer. So far as appears, therefore, the verdict of the jury must have been based upon a neglect to furnish barriers when the failure to furnish barriers had no relation to the accident, and the verdict would therefore appear to have been the result of the erroneous refusal of the court to charge this request. It is true that, after this first request had been refused, the defendant asked the court to charge:

"It is not claimed by the plaintiff on this trial that there was any duty on the part of the defendant the Pelham Operating Company to provide or erect any guard or barriers whatsoever about the elevator shaft,"

—in which the court apparently acquiesced. Immediately after that, counsel for the defendant excepted to the charge submitting to the jury the question as to whether or not the labor law was complied with, and then stated that he understood the court to charge that the Pelham Company may be held responsible for the negligence of the engineer in connection with the operation of the elevator; but it seems to me, from the method adopted in submitting the question to the jury, that the charge against both defendants based upon a violation of the labor law and the decision upon the various requests left the case to the jury in such a way that it was quite impossible for them to intelligently pass upon the only question there really was in the case, and that was the question as to the negligence of the engineer. The joint verdict was such as to indicate that the jury did not base their verdict against the Pelham Company upon the only ground upon which it could be sustained.

I think therefore that the court below should have dismissed the complaint against the Vassar Company, and the judgment against it

should be reversed on that ground; that the judgment and order denying a motion for a new trial as against the Pelham Operating Company should be reversed for errors in the charge above stated, and a new trial ordered, with costs to abide the event. All concur.