## BUCKLEY v. BEINHAUER.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

1. NEW TRIAL (§ 40*)—GROUNDS—ERRORS—SUBMISSION OF EVIDENCE.

Defendant admitted receipt of notice of a claim for injury on or about a certain date, whereupon plaintiff offered the notice in evidence, without making proof that the date was before the commencement of the action. Defendant objected that no foundation was laid for the admission of the notice, and then stated several specific grounds, but did not refer to the failure to prove that the service was prior to the commencement of the action. *Held* that, while the general objection was broad enough to cover that point, yet, as it was assumed by the court and plaintiff that the specific grounds stated were the ones relied upon, and if an objection had been specifically made as to the proof of service it would have been obviated, a new trial should not be granted for the omission to prove the service of notice before commencement of the action.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 40.*]

2. MASTER AND SERVANT (§ 277*)—INDEPENDENT CONTRACTORS AND EMPLOYÉS—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE—RELATION OF PARTIES.

In an action by a servant for injuries against a contractor, who had sublet the work on which plaintiff was engaged at the time of the injury, evidence *held* sufficient to justify a finding that plaintiff and the servant, by whose negligence plaintiff was injured, were in the employ of defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 953; Dec. Dig. § 277.*]

3. MASTER AND SERVANT (§ 182*)—INJURIES TO SERVANT—FELLOW SERVANTS.

One whose duty it is to employ men and direct them in their work, and whose principal duty consists of supervision and direction, though he may occasionally help with the actual work, bears the relation of superintendent to an ordinary workman acting under his directions.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

4. MASTER AND SERVANT (§ 117*)—DUTIES OF MASTER—OPERATION OF HOIST.

Under Labor Law (Consol. Laws, c. 31) § 18, forbidding a person who employs or directs another in the performance of labor of any kind in the erection or repairing of a building to furnish any hoist which is unsafe, or which is not so operated as to give proper protection to the persons employed, the necessity for operating a hoist safely includes the duty to work the hoist or regulate and control its management and operation.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 208; Dec. Dig. § 117.*]

5. MASTER AND SERVANT (§ 182*)—FELLOW SERVANTS—SUPERINTENDENT.

In determining whether the act of an employé, for which the master is charged with liability, was one of superintendence, the grade of the em-

ployé doing the act should qualify and determine the character of the act, if the act in itself is doubtful and indeterminate.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

6. Master and Servant (§ 279*) — Actions for Injuries — Sufficiency of Evidence.

In an action by a servant for injuries, evidence *held* to sustain the finding that the negligent act of another employé, which caused the injury, was an act of superintendence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–980; Dec. Dig. § 279.*]

Appeal from Trial Term, New York County.

Action by John Buckley against Alfred Beinhauer. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, and MILLER, JJ.

Frank V. Johnson, for appellant.

G. V. Smith, for respondent.

MILLER, J. The plaintiff, a mason's helper, was wheeling a wheelbarrow, loaded with fire bricks, from a hoist at the seventh floor of a building in the process of construction, when his foreman, one Haw, who had temporarily taken the place of the signalman, gave a signal to the engineer to lower the hoist before the plaintiff got safely away from it, for so the jury were justified in finding, with the result that the plaintiff was precipitated down the shaft, receiving the injuries for which he has recovered. The defendant was the general contractor, but had sublet portions of the work, among other things the work of putting in the Herculean arches, for which the fire bricks were being carried to the seventh floor and unloaded.

The court submitted to the jury the questions, inter alia, whether the plaintiff and Haw were in the employ of the defendant at the time of the accident, and whether Haw's act was a negligent act of superintendence. Other grounds of negligence were submitted to the jury; but as no exception was taken to their submission, and as no question is raised on this appeal relative to them, they need not be considered. The important question to determine is whether the evidence justified findings that the plaintiff and Haw were in the employ of the defendant at the time of the accident, and that Haw's negligence in giving the signal before the plaintiff had got safely away from the hoist was an act of superintendence.

A preliminary question is presented by the appellant's claim that the plaintiff failed to prove service of the notice before the commencement of the action. The defendant admitted receipt of the notice on or about June 4, 1906, whereupon the plaintiff offered it in evidence, without making proof that that was before the commencement of the action. The defendant's counsel objected that no foundation was laid for the admission of the notice, and then proceeded to state several specific grounds, not referring in any way to the omission to prove

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the service was prior to the commencement of the action. It is obvious that the specific grounds stated were assumed by the court and the opposing counsel to be the ones relied upon; and, without suggesting that counsel was disingenuous in thus making the objection, the manner of taking it was almost certain to divert attention from the point now relied upon. The case had been tried once, and the notice had been received in evidence. It is quite obvious that, if the specific objection now relied upon had been made, it would have been obviated, probably, by the admission of counsel; and, while the general objection was broad enough to cover the point, we do not think that it justifies or requires the granting of a new trial.

The jury were justified in finding that the plaintiff and Haw were in the employ of the defendant; that, while the defendant had sublet that part of the contract upon which they were employed at the time of the accident, he had, by a subsequent arrangement with the subcontractor, undertaken to perform the labor on the part thus sublet; that, in place of loaning his men to the subcontractor, as is now claimed, he in fact retained control and supervision of them; that the subcontractor's representative, Hall, did not exercise any authority over the workman, but only supervised the work to the extent of supplying the technical knowledge, which the defendant's men did not possess; and that at least there was no change of masters observable by the workmen, who were concededly in the general employ of the defendant. Haw was plainly a superintendent within the meaning of the statute. He employed the men and directed them in the performance of their work. His sole and principal duty consisted of supervision and direction, though he may occasionally have helped out with his hands.

The movement of the hoist was controlled by the engineer. When the hoist was loaded in the basement and ready to ascend, a man there signaled the engineer by pulling the bell rope, and when it was ready to descend for another load a man on the floor where it was unloaded likewise signaled the engineer. An ordinary workman had been giving the signals on the day of the accident; but Haw had directed him to do some other work, and had temporarily taken his place. The evidence justifies the inference that he had done that for the purpose of hurrying up the men who were taking the loaded barrows from the hoist. One of those men testified:

"He was ordering us around there. He ordered us to get a move on ourselves and shake it up, and was there ringing the bell and giving signals. He had been there at the hod hoist giving signals about 15 minutes before the accident happened."

Another testified:

"He told us that he was in a hurry, and he wanted us to distribute that stuff around to get ready for the bricklayers to go to work on that floor."

Section 18 of the labor law, now chapter 31 of the Consolidated Laws, provides:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure, shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical

contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

Although that statute has been in effect for many years, I am not aware that the words "so * * * operated" have been the subject of judicial construction. If the statute imposes the absolute duty on the master to run hoists safely, it is immaterial whether the act of giving the signal be treated as one of superintendence. "To operate" a machine means "to work the machine, or in other words to regulate and control its management and operation." Opinion of Ingraham, J., in Gallenkamp v. Garvin Machine Co., 91 App. Div. 141, 86 N. Y. Supp. 378, adopted by the Court of Appeals in 179 N. Y. 588, 72 N. E. 1142. Was the statute intended to charge the master with the absolute duty of safely working the hoist? If so, it is strange that that view has not been suggested before this. I much doubt that it has been entertained either by the bench or by the bar. It has not been supposed, I think, that, where two men were raising or lowering a swinging scaffold, such as is commonly used by painters, the master would be liable for the negligence of one of them, resulting in injury to the other; and in the familiar hod hoist cases, involving the negligence of the engineer, it has frequently been decided, without reference, to be sure, to the statute, that the independent contractor, hiring out the hoist and engineer, was solely responsible for the latter's negligence. See Genovesia v. Pelham Operating Co., 130 App. Div. 200, 114 N. Y. Supp. 646. It is permissible to construe the statute as referring to method of operation, and thus to hold that a duty was imposed by it upon the master to provide and maintain a safe system or method of operation, though in the case of rapidly moving hoists, used in the construction of high buildings, it is doubtful if that construction would enlarge the master's duty at common law (see Haggblad v. Brooklyn Heights R. R. Co., 117 App. Div. 838, 102 N. Y. Supp. 1039), and the obvious purpose of the statute was to do away with the fellow-servant rule in the cases to which it applies.

However, in the view of the case which I take, it is unnecessary to decide that question. The defendant was at least charged with the continuing duty to see that the hoist was operated by a proper system or method. The foreman or superintendent, then, had some duties of supervision with respect to the running of it; and it seems to me difficult to divorce that duty and his position as superintendent from a negligent act performed by him in the actual running of it, even though strictly such act does not have to do with the method or system of operation. The statute was intended to reverse the common-law rule that the character of the act, and not the grade of the servant doing it, determined the master's liability; and, while the master is now liable only for an act of superintendence, or, in the words of the statute, for the act of a person "exercising superintendence," the grade of the servant doing them ought to qualify and determine the character of acts in and of themselves doubtful and indeterminate (see McHugh v. Manhattan R. R. Co., 179 N. Y. 378–384, 72 N. E. 312); otherwise the plain purpose of the statute will be frustrated.

Can there be any doubt that Haw was "exercising superintendence" at the time of the accident? He was hurrying the men, and giving signals to the engineer. Doubtless his premature act in signaling the engineer was due to his effort to hasten the work; at least the jury were justified in so finding. If, in the effort to do that, he had ordered the signalman to give the signal before the plaintiff was safely away from the hoist, we should have little difficulty in holding that such order and direction was a negligent act of superintendence. See Boyle v. McNulty Bros., 129 App. Div. 412, 113 N. Y. Supp. 240. The negligence complained of consists, not in the manner of giving the signal, but in the fact of giving it at all at such a time. It is unimportant that the giving of signals was a detail of the work which might be, and ordinarily was, performed by an ordinary workman. When given by the superintendent, especially in view of the surrounding circumstances in this case, they may well be considered as acts of superintendence, precisely as though, instead of actually giving them, he had directed them to be given. In a sense, the signal merely conveyed information to the engineer; but, in another sense, it was a direction to him to lower the hoist, and, when given by the superintendent, it is difficult to distinguish between it and a verbal direction given by him. Considering, then, the manner in which this particular work was being done, the position of Haw, and his purpose in taking the place of the signalman, the indeterminate character of the act itself, and the absolute duty, laid on the master by the statute, at least to provide and maintain a safe method of operation, I think it was at least permissible for the jury to find that Haw's act was an act of superintendence. See Guilmartin v. Solvay Process Co., 189 N. Y. 490, 82 N. E. 725; Gallagher v. Newman, 190 N. Y. 444, 83 N. E. 480, 16 L. R. A. (N. S.) 146.

The judgment and order should be affirmed, with costs. All concur.