### HOLMSTROM v. WARD et al.

(Supreme Court, Appellate Division, First Department. January 10, 1913.)

1. MASTER AND SERVANT (§ 289*)—INJURIES—JURY QUESTION—CONTRIBUTORY NEGLIGENCE.

In an action for injuries to an iron worker while riding a beam which was being hoisted by the rope breaking, evidence *held* to make it a jury question whether plaintiff was guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

2. MASTER AND SERVANT (§ 288*)—INJURIES—ASSUMED RISK.

Evidence in an action for an iron worker's injuries while riding a beam which was being hoisted by the rope breaking and permitting it to fall *held* to make it a jury question whether plaintiff assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

3. MASTER AND SERVANT (§ 279*)—INJURIES—JURY QUESTION—ACTS OF SUPERINTENDENT.

In an action for an iron worker's injuries while riding a beam which was being hoisted in a building by the rope breaking, evidence *held* to sustain a finding that the foreman's acts in ordering plaintiff to ride the beam were acts of superintendence, so as to make the employer liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by John Holmstrom against William L. Ward and others. From an order dismissing the complaint and an order denying plaintiff's motion to vacate the dismissal and for a new trial, he appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Elmer C. Miller, of New York City (Grant Hoerner and Harold P. Coffin, both of New York City, on the brief), for appellant.
William L. Kiefer, of New York City, for respondents.

LAUGHLIN, J. The complaint was dismissed pursuant to a direction of the court on motion of the defendants at the close of the plaintiff's evidence. The plaintiff was in the employ of the defendants as an iron worker, and on the 22d day of January, 1909, while so employed in the erection of a building at the northeast corner of Thirty-First street and Sixth avenue, borough of Manhattan, New York, he sustained personal injuries, and this action is brought under the Employer's Liability Act to recover damages therefor. We are of opinion that the notice served by the plaintiff was a sufficient compliance with the statute. Pursuant to the notice, the liability is predicated on the negligence of the defendants' foreman, designated as a pusher, while performing acts as a superintendent. The plaintiff and six others constituted a gang of men working under one Jack, from whom they received all their orders, and whose time was almost exclusively occupied in directing the work. Shortly before the accident, Jack ordered the plaintiff and another member of the gang to hook onto a steel beam 18 feet 6 inches in length, and weighing 1,296 pounds, which had been elevated from the street and rested on the girders on the second floor, with a view to lifting it from the girders to enable the insertion of planks for the purpose of making a temporary floor. The plaintiff attached the sling to the middle of the beam, and hooked it onto a derrick which had been installed for use in the construction of the building. According to the evidence, this sling was suitable for lifting or moving the beam a short distance; but there is evidence to the effect that it was not suitable for the purpose of lifting the beam to its place in the permanent structure, and carrying the men who were to connect it with the lugs on the columns at either end. The edges of the beam around which the rope forming the sling passes are sharp, and there is danger that the rope will be cut thereby if the beam is subjected to any very great strain, and, in order to prevent the cutting of the rope, a protection known as "softening" is used between the rope and the edges of the beam, and "lashing" which consists in re-enforcing the sling by winding another rope, also likewise protected by "softening" around the beam and attaching it to the derrick, is also used. The jury would have been justified in finding on the evidence adduced in behalf of plaintiff that, when plaintiff attached the sling to the beam, he understood that the beam was merely to be lifted for the purpose of laying the plank flooring, and that he neither used softening nor re-enforced the sling by lashing

for the reason that he was not aware that the beam was to be hoisted into place and attached to the structure; that, after the sling was so attached, Jack ordered the plaintiff and a fellow workman to connect the beam to the floor above; and that when one of them protested that the sling was not suitable for lifting the beam for connection, and should be protected by softening and lashing, Jack, in effect, directed them to get on the beam and ride up on it, and connect it without waiting to use softening and lashing, and that they did so. The derrick was operated by an engineer who was so located that he was obliged to receive signals, which were given from time to time by Jack to a signalman, who communicated them to the engineer. The evidence presented in behalf of the plaintiff would warrant a finding that Jack, knowing that the sling was not protected by softening or lashing, ordered the beam raised into place, and the plaintiff and his fellow workman to ride upon it, as already stated, for the purpose of connecting it to the lugs at either end on the floor above; that as the beam was brought to the vicinity of the place where it was to be attached the plaintiff was at one end and his fellow workman at the other, and each of them was endeavoring to guide it into place; that the end upon which the plaintiff was riding came nearly into place, but required to be pushed over somewhat from the other end which had come into contact with the upright column, causing friction; that the hoisting was then stopped, and shortly after by direction of Jack was resumed, and while the end of the beam was thus in contact with the upright column it was further elevated several inches, and thereupon Jack determined to get a pinch bar for the purpose of prying the beam away from the upright column, and a few seconds after he started for the pinch bar the sling broke, and the beam and plaintiff were precipitated to the second floor, and he was injured.

[1-3] It cannot be said as matter of law that the plaintiff was guilty of contributory negligence, or that he assumed the risk of injury from this cause. It is quite clear that those questions were for the jury. The evidence, which I have outlined briefly, tends to show negligence on the part of Jack while performing acts of superintendence, which was the nature of his sole or, at least, principal duties; and, if it may not be said as matter of law that the acts were acts of superintendence, at least the jury would have been justified in so finding, and on that theory the defendants under section 1 of the Employer's Liability Act, being chapter 600, Laws 1902, now section 200, Labor Law (Consol. Laws 1909, c. 31), would be liable for the negligence of Jack. Guilmartin v. Solvay Process Co., 189 N. Y. 490, 82 N. E. 725; Gallagher v. Newman, 190 N. Y. 444, 83 N. E. 480, 16 L. R. A. (N. S.) 146; Smith v. Milliken Bros., 200 N. Y. 21, 93 N. E. 184; Buckley v. Beinhauer, 136 App. Div. 540, 121 N. Y. Supp. 180; affirmed 201 N. Y. 572, 95 N. E. 1124; Impellizzieri v. Cranford, 148 App. Div. 758, 133 N. Y. Supp. 336.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.