Statement of the Case.
MONROE, C. J.
Plaintiffs appeal from a judgment rejecting their demand for the cancellation of an oil and gas lease and for damages said to have been sustained by reason of alleged slander of title. The consideration moving to the lessors was $1,090 in cash, and the obligation of the lessee to deliver to them a certain proportion of any oil and to pay rental for, and to allow them the use of, a certain proportion of any gas that might be found (as in the ordinary lease), the lessee reserving the right to remove all machinery, fixtures and improvements placed on the premises at any time. The main dispute arises in the construction of the folló wing provisions, to wit:
“To have and to hold the above-described premises unto the said party of the second part, * * * on the following conditions: In case operations far the drilling of a well * * * are not commenced and prosecuted with due diligence within one year from this date, then this grant shall immediately become, ipso facto, null and-void as to both parties; provided, that second party may thereafter prevent such forfeiture, from quarter to quarter, for two additional years, by paying to the first party the sum of $272.50 per quarter, in advance, until such well is commenced; and it is agreed that the completion of a well shall operate as full liquidation of all payments under this provision, during the remainder of the term of this grant. * * *
“In case the party of the second part should bore and discover either oil or gas, then, in that event, this grant shall be in full force * * * for 25 years from the time of the discovery of said product, and as much longer as oil or gas may be produced in paying quantities thereon; the party of the second part binding itself, after the discovery of oil or gas, in paying quantities, to prosecute diligently the work of production,” etc.
The contract bears date December 12,1914; and the suit was instituted on October 28, 1916, and was heard and decided on the following agreed statement of facts, to wit:
“It is admitted that the . lease was executed * * * on the date and for the consideration shown by copy annexed to plaintiff’s petition, and that rental payments were made, * * * as follows: $272.50 * * * December 12, 1915; $272.50 * * * March 12, 1916; $272.50 * * * June 12, 1916, and that no further payments have been made.
“It is further admitted that defendant commenced the drilling of a well * * on July 30, 1916, and that said well was drilled to a depth of 2,923 feet, and completed October 2, 1916, and that the same was a dry hole and was abandoned on October 3,1916; * * * that on October 20, 1916, defendant undertook to make another location for the drilling of an additional well, but that the plaintiffs prevented the defendant from making said location or drilling *275 said well, on the ground * * * that they claimed that said lease- had expired, and that, soon thereafter, the present suit was brought to annul said lease. * * * It is further admitted that all of the machinery and appliances used in the drilling of said well were left on said property until after the present suit was filed.”
Opinion.
The petition herein filed alleges a variety of matters in support of its demand, but the counsel by whom it was prepared urged in the district court, and urge here, only that which is set forth as follows:
“But your petitioner shows that, in any event, if said contract be not null and void for the reasons stated, the same has lapsed, under the very terms thereof, in this: That said contract provides for an extension, from quarter to quarter, on payment of $272.50, and it is agreed that the completion of a well shall operate as a full liquidation of all payments under this provision during the remainder of the term ot the grant; and the said oil company, not having paid the said $272.50 for the quarter beginning on the 12th day of September, 1916, when the same was due, forfeited all of its rights under said lease; the drilling of the said dry hole thereon not having operated as a full payment of said option money, but the meaning and true intent of said contract was that the well referred to in this provision was a producing well.”
It is indisputable that it was the intention of the parties, clearly expressed, that defendant should commence operations for the drilling of a well and prosecute the same diligently, within one year from the date of the contract, under the penalty of forfeiting its rights, in the event of its failure so to do, unless within such year it paid for aD extension of the delay, for one quarter, the sum agreed on, and that it was accorded the right to secure further delay, quarter by quarter, for 2 years, by making like payments in advance of each succeeding quarter.
It. is equally indisputable that no such payments were to be made after the commencement of operations for drilling and during the progress of that work, since the contract declares that the lessors, “in consideration of the sum of $1,090.00, paid by the lessee, and the further consideration hereinafter mentioned” [being the delivery of one-eighth of the oil and certain payments for the gas products of each well, in the event of the discovery, saving and use, off the premises of those minerals, respectively] “ * * * does, by these presents, grant * * * and convey” to said lessee “all of the oil and gas * * * under the * * * land,” “together with right of ingress and egress, at ail times, for the purpose of drilling, mining and operating for gas, oil and water.”
Counsel for plaintiff say, in their brief:
“The rentals, in the present case, were payable ‘until a well is completed’ and the rentals were paid up to that time, but it was further provided ‘and it is agreed that the completion, of a. well shall operate as full liquidation of all payments under this provision, during the remainder of the term of this grant.’ ” (Inside commas and italics by the counsel.)
But the rentals were not payable “until a well is completed.” The contract reads, “until such well is commenced.” And the payments were not made “up to that time” (i. e., up to the completion^ of a well), since it is admitted that the last of such payments was made on June 12, 1916, for the quarter then beginning, and that the well was commenced on July 30, and completed on October 2. The payment which would otherwise have fallen due on September 12, was not made at that time because the drilling was in progress, and no payment was due. The language above quoted from counsel’s brief is immediately succeeded by the following:
“The fact that the well was commenced relieved them from the payment of rentals only while it was in process of drilling, and, if the well drilled had been a producing well, the defendant would have owed no further rentals during the remainder of the term of the grant.”
“If the well referred to in the contract of lease meant a dry hole, then the plaintiffs would have received absolutely no benefit from it, and the defendant could have held the lease without paying anything and without any benefit to *277 the plaintiffs at all. The contract of lease clearly provides that a well must be ‘commenced and prosecuted with due diligence within one year from this date,’ or, ‘this grant shall immediately become ipso facto null and void as to both parties.’ The grant then further provides: ‘Second party may thereafter prevent such forfeiture. * * * ’ Then follows the clause, and the only clause, which relieves the defendant from the obligation to pay the rental, and that was, on the completion of a well. The lower judge held that the drilling of a dry hole would hold the lease, provided that the lessee with due diligence commenced operations for drilling another well, without the payments of any rentals at all. But in this he ignored the very terms of the lease, and did not consider the requirements of the completion of a well as being necessary for the liquidation of the rentals. * * * We, therefore, insist that the lease under consideration had lapsed for failure to pay the rental on September 12, 1916, for the reason that the well drilled was not a producing well as contemplated by the parties. In any event, when it was brought in as a dry hole, on October 2, 1916, the immediate payment of rentals should have been made, in order to keep it alive until October 20, 1916, when the defendant attempted to drill a second well on the premises.”
We find it difficult to follow the counsel in an argument which involves the assumption, in such rapid succession, of apparently conflicting positions. The contract provides, in plain terms, that the “rentals” (as we may as well call the payments for extensions of time) shall be payable, quarterly in advance, “until such well is commenced," and the term “well,” as thus used, can have no other meaning than hole, to be drilled into the earth with the hope that it may become a well through which oil or gas may be produced, .and which retains that status until the drilling has proceeded to a depth which determines whether it is a producer and a “well” or merely a dry hole. The whole process, however, constitutes prosecution of the work of drilling a well within the meaning of the contract, and the abandonment of the dry hole as thus determined, the selection of another site, and the commencement there of the operation of drilling that which is hoped and in* tended to be a well, but which may also prove to be a dry hole, is the continued prosecution of the same work. The contract here in question makes no special provision for the payment of rental during intervals in the actual prosecution of the work of drilling a well, once begun, as, for instance, when occasioned by a breakdown of the machinery, the destruction of the derrick by a tornado, the blowing out, or breaking, of the drill, etc., nor does it make provision for interruptions when caused by failure to find oil or gas at the place where the drilling is first commenced ; and the question, How much time should he allowed in a particular case before the expiration of the period of 2 years during which delay may be obtained and before the lessor can demand the forfeiture of the lease? is determinable according to the circumstances and equities of the case. In this instance, we think the delay of 17 days between the abandonment of the work at the site first selected and its resumption at the site then chosen was not unreasonable, and'subjected defendant neither to the forfeiture of its contract nor to liability for rental during that period, or that which succeeded, since the resumed work was interrupted by plaintiffs. The declaration in the provision of the contract heretofore quoted reading:
“And it is agreed that the completion oí a well shall operate as full liquidation of all payments under this provision during the remainder of the term of the grant”
—must be construed with the language which precedes and that which follows, and with reference to the purpose of the contract, and, so construed, contemplates a producing well, and not a dry hole, which, latter, is but the result of unsuccessful work, done in the course of an attempt to drill the well which it is the purpose of the contract to secure, and contemplates as the “term of .the contract,” not the 2-year period during which the lessee may obtain extensions of time, but *279 the period concerning which the language of the contract, immediately following that last above quoted, reads:
“In case the party of the second part should bore and discover either oil or gas, then, in that event, this grant * * * shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil or gas may be produced- in paying quantities; the party of the second part binding itself after the discovery of oil or gas in paying quantities, to prosecute diligently the work of production,” etc.
As the term thus specified begins with the discovery of oil or gas (or, in other words, with the drilling of a producing well), it includes so much of the 3-year period as may be left after such discovery.
We have been referred to a number of cases which, so far as we have been able to examine them, are of doubtful application here, and we find no good reason for lengthening this opinion by differentiating them. Usually the lessor comes into court complaining of the lessee’s failure to develop, and we find no case in which, as in this, the sole complaint is that the lessee is proceeding to develop in (what we find to be) strict accordance with the terms of the contract sued on. We think the suit was properly dismissed, and the judgment appealed from is
Affirmed.