SOLBERG, APPELLANT, *v.* SUNBURST OIL & GAS CO. ET AL., RESPONDENTS.

(No. 5,653.)

(Submitted March 23, 1925. Decided April 8, 1925.)

[235 Pac. 761.]

*Oil and Gas—Leases—Failure to Release of Record—Damages —Pleading — Evidence—Admissibility—"Commencing Drilling Operations"—Definition—Witnesses—Attorneys' Fees— Statute—Unconstitutionality—Appeal—Law of Case.*

Appeal—Reversal of Judgment—Retrial—Law of Case.
   1.   On a retrial of a cause after reversal of the judgment, the determination of the supreme court is the law of the case and must be followed by the trial court.
Oil and Gas—"Spudding in"—"Commence Drilling Operations"—Definitions.
   2.   The terms "spudding in" of an oil well as understood by oil operators, and "commence drilling operations," used in an oil lease, denote the first movement of the drill in penetrating the ground.
Same—Lease—Construction Most Strongly Against Lessee.
   3.   The terms of an oil and gas lease must be construed *most strongly* against the lessee and in favor of the lessor.
Same—"Commence Drilling Operations"—Meaning of Term.
   4.   In an action to have an oil and gas lease forfeited for failure of the lessee to "commence drilling operations for oil" within the time specified in the lease, *held* that the quoted phrase meant the commencement of actual drilling and not the commencement of preliminary work necessary to such drilling; that evidence that the well was not "spudded in" (see par. 2 above) was sufficient to make out a *prima facie* case, and that therefore the granting of a nonsuit was error.
Same—Witnesses—Qualification to Testify as to Depth Well Drilled.
   5.   Where an oil and gas lease required the lessee to drill a well within a certain time to the depth of 2,500 feet or until oil was discovered at a lesser depth, a tool-dresser who had worked about

the well for fifteen days until operations ceased was qualified to testify that then the depth reached was 2,460 feet and that at that time it was not producing oil, the establishment of such facts not requiring the testimony of an expert.

Special Damages Must be Pleaded.

6. To warrant recovery of special damages, *i. e.*, such damages as are the natural but not the necessary result of defendant's wrongful act, they must be pleaded.

Oil and Gas Lease—Failure to Release of Record—Damages—Evidence —Admissibility.

7. Under his general allegation of damages plaintiff in an action to compel the release of record of an oil and gas lease after an alleged forfeiture under its terms, proof that because of defendant's failure to make release plaintiff had been prevented to make a new lease to his damage (special in character) in a given amount was inadmissible for that purpose, but admissible to show the nominal damages recoverable under section 6903, Revised Codes of 1921.

Same—Attorneys' Fees—Statute—Unconstitutionality.

8. *Held,* that the provision of section 6903, Revised Codes, allowing plaintiff in an action to compel the release of record of an oil and gas lease an attorney's fee for preparing and prosecuting the suit, is unconstitutional as denying the defendant the equal protection of the law, in that the provision is not reciprocal.

*Appeal from District Court, Toole County in the Nineteenth Judicial District; Rudolf Von Tobel, a Judge of the Tenth District, presiding.*

ACTION by Martin Solberg against the Sunburst Oil & Gas Company and another. Judgment for defendant and plaintiff appeals. Reversed and remanded.

*Mr. Louis P. Donovan,* for Appellant, submitted a brief and argued the cause orally.

Plaintiff contends that the words "drilling operations" should, in the absence of evidence showing a contrary intention, take their ordinary meaning, and should require the lessee to commence the actual drilling operation, or the operation of drilling within time specified. The evidence shows that the lessee failed to "prosecute the said operations diligently." "What constitutes diligence in prosecuting drilling operations is a question of fact to be determined by the trier of the facts." (*Lane* v. *Gordon,* 18 App. Div. 438, 46 N. Y. Supp. 57; *Day* v. *Kansas City Pipe Line Co.,* 87 Kan. 617, 125 Pac. 43;

*Buffalo Valley Oil & Gas Co.* v. *Jones,* 75 Kan. 18, 88 Pac. 537; *American Window Glass Co.* v. *Indiana Nat. Gas etc. Co.,* 37 Ind. App. 439, 76 N. E. 1006; *Aye* v. *Philadelphia Co.,* 193 Pa. St. 451, 74 Am. St. Rep. 696, 44 Atl. 555; Morrison on Oil & Gas Rights, 84.)

Appellant submits that the court could not say as a matter of law that the lessee had found oil in paying quantities on March 13, 1922. As to what constitutes oil in paying quantities, see *Ardizonne* v. *Archer,* 72 Okl. 70, 178 Pac. 263; *Keechi Oil & Gas Co.* v. *Smith,* 81 Okl. 266, 198 Pac. 588. There is nothing in the evidence that justified the court in taking the case from the jury on the theory that plaintiff had waived his right to declare a forfeiture. The plaintiff cannot be charged with having waived his right to declare a forfeiture unless it appears that he knew the facts on which the forfeiture rests and intentionally and voluntarily relinquished his right. (36 C. J. 1077, 1078.) This lease is of the ''unless'' type, and it also contains a surrender clause. Performance of its terms is therefore purely optional on the part of the lessee. (*Thomas* v. *Standard Devel. Co.* (Mont.), 224 Pac. 870.) The principle that the law abhors forfeitures has no application to options, or optional contracts, and therefore has no application to a contract of the character of the lease here in question. (12 Cal. Jur., pp. 638, 639; *Harrison* v. *Woodward,* 11 Cal. App. 15, 103 Pac. 933.) Since the principle that the law abhors a forfeiture has no application to an oil and gas lease like the one here under consideration, it follows that the waiver of a lessor's right to terminate the lease must be proved by stricter evidence than is ordinarily required in cases of forfeiture. In the present case, however, there is no proof whatsoever of waiver. The motion for nonsuit was granted by the trial court upon the bizarre view that whatever the lessor did not learn, he waived. Appellant submits that the law is settled otherwise in this state and elsewhere.

The statute expressly provides that in an action under section 6903, the plaintiff "may also recover any additional damages that the evidence in the case will warrant." (Sec. 6903, Rev. Codes 1921.) The measure of damages is "the amount which will compensate for all the detriment proximately caused (by defendant's breach of obligation) whether it could have been anticipated or not." (Sec. 8686, Rev. Codes 1921.) And it includes the "detriment resulting after the commencement" of the action. (Sec. 8661, Rev. Codes 1921; *Hicks* v. *Drew*, 117 Cal. 305, 49 Pac. 189.)

The section under which this action is brought was especially designed to prevent those injuries which result to land owners where a lease, in fact terminated, is still left upon the public record, and the land owner's title thereby clouded. Damage resulting from the depreciation in value of the land during the period that the land owner's title is wrongfully clouded by the uncanceled lease is the very damage against which the statute was designed to provide remedy. (*Dixon* v. *McCann*, 87 Okl. 109, 206 Pac. 597.)

The depreciation in the value of the lease is, therefore, a proper element of damages, and since such loss from depreciation in the value of the lease is the natural result of defendant's wrongful act, it is not necessary to plead such depreciation specially, but it may be shown under the general allegation of damages. (*Mollohan* v. *Patton*, 110 Kan. 663, 202 Pac. 616, 205 Pac. 643; *Hicks* v. *Drew*, 117 Cal. 305, 49 Pac. 189; *Timm* v. *White*, 28 N. M. 59, 205 Pac. 896; *McLennan* v. *Ohmen*, 75 Cal. 558, 17 Pac. 687; *Morgan* v. *Reynolds*, 1 Mont. 163.)

*Messrs. Norris, Hurd & Rhoades* and *Mr. Homer G. Murphy,* for Respondents, submitted a brief; *Mr. George E. Hurd* argued the cause orally.

Where a lease, as in the case at bar, provides that the lessee "will commence drilling operations for oil" and shall prosecute the said operations diligently thereafter, there cannot

be any room for doubt that the term "drilling operations" applied to all of the series of acts necessarily involved in the commencement of a well. (*Fast* v. *Whitney*, 26 Wyo. 433, 187 Pac. 192; *Henderson* v. *Farrell*, 183 Pa. St. 547, 38 Atl. 1018; *Fleming Oil & Gas Co.* v. *South Penn Oil Co.*, 37 W. Va. 645, 17 S. E. 203; *Gonzales* v. *Cowerd*, 78 Okl. 84, 188 Pac. 1055; *Cromwell* v. *Lewis*, 98 Okl. 53, 223 Pac. 671; *Knight Bros.* v. *Standard Oil Co.*, 147 La. 572, 84 South. 653; *Terry* v. *Texas Co.* (Tex. Civ.), 228 S. W. 1019; *McCallister* v. *Texas Co.* (Tex. Civ.), 223 S. W. 859; *Cockrum* v. *Christy* (Tex. Civ.), 223 S. W. 308; *Duffield* v. *Russell*, 19 Ohio C. C. 266; *Cox* v. *Miller*, 206 Mo. App. 576, 227 S. W. 652; Morrison on Oil & Gas Rights, p. 84; 1 Thornton's Law of Oil & Gas, 3d ed., sec. 103, p. 163.)

A more liberal rule relative to what constitutes due diligence is applied to wildcat territory than in proven fields. (*Keechi Oil & Gas Co.* v. *Smith*, 81 Okl. 266, 198 Pac. 588; *Lone Star Gas Co.* v. *McCullough* (Tex. Civ.), 220 S. W. 1114; *Masterson* v. *Amarillo Oil Co.* (Tex. Civ.), 253 S. W. 908.)

The facts in the record, uncontradicted, are overwhelmingly in favor of the ruling of the court that drilling operations were prosecuted with diligence. (See *American Window Glass Co.* v. *Indiana Natural Gas & Oil Co.*, 37 Ind. App. 439, 76 N. E. 1006; *Brewster* v. *Lanyon Zinc Co.*, 140 Fed. 801, 72 C. C. A. 213; *Becker* v. *Submarine Oil Co.*, 55 Cal. App. 698, 204 Pac. 245; *Indiana Oil, Gas & Development Co.* v. *McCrory*, 42 Okl. 136, 140 Pac. 610, 611; *Masterson* v. *Amarillo Oil Co.*, *supra;* *Elk Fork Oil & Gas Co.* v. *Jennings*, 84 Fed. 839.)

Whether "oil in paying quantities" was found is to be determined by the lessee acting in good faith. In this case the appellant, although having the burden of proof, did not offer any evidence upon that question. (*Barnsdall* v. *Boley*, 119 Fed. 191; *Lowther Oil Co.* v. *Miller-Sibley Oil Co.*, 53 W. Va. 501, 97 Am. St. Rep. 1027, 44 S. E. 433; 1 Thornton on Oil & Gas, secs. 148, 149; *Colgan* v. *Forest Oil Co.*, 194 Pa. St.

234, 75 Am. St. Rep. 695, 45 Atl. 119; *Texas Pacific Coal & Oil Co.* v. *Bruce* (Tex. Civ.), 233 S. W. 535; *South Penn Oil Co.* v. *Snodgrass*, 71 W. Va. 438, 43 L. R. A. (n. s.) 848, 76 S. E. 961; *Osburn* v. *Finkelstein*, 189 Ind. 90, 126 N. E. 11; *Bay State Petroleum Co.* v. *Penn Lubricating Co.*, 121 Ky. 637, 87 S. W. 1102.)

If the lessor acquiesces in delays in either the payment of the rentals or commencing explorations, he waives the right to forfeit the lease because of such failure, and the lessee may hold such lease notwithstanding such technical forfeiture. (2 Thornton on Oil & Gas, pp. 1194, 1195; *New American Oil etc. Co.* v. *Troyer*, 166 Ind. 402, 76 N. E. 253, 77 N. E. 739; *Westmoreland etc. Gas Co.* v. *De Witt*, 130 Pa. St. 235, 5 L. R. A. 731, 18 Atl. 724; *Campbell* v. *Rock Oil Co.*, 151 Fed. 191, 80 C. C. A. 467; *Kansas Natural Gas Co.* v. *Harris*, 79 Kan. 167, 100 Pac. 72; *Monarch Oil etc. Co.* v. *Richardson*, 124 Ky. 602, 99 S. W. 668; *Pyle* v. *Henderson*, 65 W. Va. 39, 63 S. E. 762; *Venedocia Oil etc. Co.* v. *Robinson*, 71 Ohio St. 302, 104 Am. St. Rep. 773, 73 N. E. 222; *Craig* v. *Cosgrove*, 277 Pa. St. 580, 121 Atl. 406.)

It was incumbent upon the plaintiff to show his right to a forfeiture by the express language of the lease, or by words clearly implied therefrom. (*Texas Pacific etc. Oil Co.* v. *Bratton* (Tex. Civ.), 239 S. W. 688; *Decker* v. *Kirlicks*, 110 Tex. 90, 216 S. W. 385; *McCallister* v. *Texas Co.* (Tex. Civ.), 223 S. W. 859.)

Plaintiff did not plead special damages. Only actual losses shown by the evidence are recoverable under our statute. Statutes similar to ours appear in Wyoming, Kansas and Oklahoma. (*Mollohan* v. *Patton*, 110 Kan. 663, 202 Pac. 616, 205 Pac. 643; *Elliott* v. *Crystal Springs Oil Co.*, 106 Kan. 248, 187 Pac. 692; *Dixon* v. *McCann*, 87 Okl. 109, 206 Pac. 597; *Barquin* v. *Hall Oil Co.*, 28 Wyo. 164, 201 Pac. 352, 202 Pac. 1107.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is the second appeal in this action. On the former appeal the judgment was reversed and the cause remanded for a new trial. (70 Mont. 177, 225 Pac. 612.) Upon the first trial, after the submission to a jury of all evidence by both parties, the jury on motion of defendant's counsel was discharged; the case being treated by the court as one of purely equitable cognizance. On the first appeal it was held that the cause is one at law rather than in equity, and that the court was in error in discharging the jury. The plaintiff's right to a trial by jury was the only question considered and determined on the appeal. The action is one to compel a release upon the records of Toole county of an oil and gas lease in which the plaintiff is the lessor and the defendants are by mesne conveyances the lessees. The complaint alleges a forfeiture of rights under the lease and general damages for failure of the defendants to discharge the lease of record. The answer, aside from denials, pleads performance of the terms of the lease, waiver and estoppel. The defendant Gordon Campbell made no appearance in the action. On the trial a jury was regularly impaneled and at the conclusion of the plaintiff's case the court granted the defendant's motion for a nonsuit and entered judgment thereon in favor of the defendant Sunburst Oil & Gas Company. The appeal is from that judgment.

Eleven errors are specified by the plaintiff, of which we will consider in order such as we deem requisite in disposing of the appeal.

1. Did the court err in granting the defendant's motion for a nonsuit? The lease involved was executed by the plaintiff on July 19, 1920, to Gordon Campbell, defendant's assignor, and the covenants thereof which the plaintiff endeavored to establish as having been breached read as follows: "That on or before eight months from date, he will commence drilling operations for oil in what is known as the Rocky Ridge

Dome, and shall prosecute the said operations diligently thereafter unless prevented by strikes, the elements, unavoidable accidents or other causes beyond the control of the second party until a well of 2,500 feet in depth is drilled or until oil or gas or other hydrocarbons or mineral is discovered in paying quantities at a lesser depth.  *  *  *  It is further agreed that in case of the default of the party of the second part in the performance of any of the terms or conditions of this lease that the said party of the second part shall execute and deliver, within thirty days after demand, a full discharge, satisfaction and release of the party of the first part from all the terms and obligations of this lease and option to purchase and all the obligations thereof.''

The statutes upon which the action is predicated read:

''When any oil, gas, or other mineral lease heretofore or hereafter executed shall become forfeited, it shall be the duty of the lessee, his successor or assigns, within sixty days from the date this Act shall take effect, if the forfeiture occurred prior thereto, and within sixty days from the date of the forfeiture of any and all leases, to have such lease released from record in the county where the leased land is situated without cost to the owner thereof.''   (Sec. 6902, Rev. Codes 1921.)

''Should the owner of such lease neglect or refuse to execute a release as provided by this Act, then the owner of the leased premises may sue in any court of competent jurisdiction to obtain such release, and he may also recover in such action of the lessee, his successor or assigns, the sum of one hundred dollars as damages, and all costs, together with a reasonable attorney's fee for preparing and prosecuting the suit, and he may also recover any additional damages that the evidence in the case will warrant. In all such actions writs of attachment may issue as in other cases.''   (*Id.*, sec. 6903.)

On the former appeal we held the issue to be: ''Whether [1] the lessee has neglected or refused, after forfeiture of the lease and demand for a release, to have the lease canceled of record. First, the forfeiture must be shown; second,

[73 Mont. 94.]

demand for a release; and, third, the failure of the lessee to release the lease of record." On a retrial this determination became the law of the case and should have been followed by the trial court. (Sec. 10561, Rev. Codes 1921; *Palmer* v. *Murray,* 8 Mont. 174, 19 Pac. 553; *Easterly* v. *Jackson,* 36 Mont. 205, 92 Pac. 480; *Neary* v. *Northern Pac. Ry. Co.,* 41 Mont. 480, 488, 110 Pac. 226; 4 C. J. 1218.)

We now pause to ascertain from the record whether the [2-4] trial court followed the law as thus established. Determination thereof is dependent upon the proper construction to be placed on the language of the contract. The lessee is required within a period of eight months from July 19, 1920, to *"commence drilling operations for oil."* What was meant by the use in the contract of the words italicized? To meet the terms of the contract and avoid the possibility of a forfeiture, such *"drilling operations"* were required to have been *"commenced"* before the nineteenth day of March, 1921. The plaintiff contented himself with submitting proof that the drilling of a well was not in fact commenced until April 14, 1921. The phrase "spudded in," as employed and understood by oil operators, denotes the first abrasion of the soil by the drill, or that of first entrance of the drill into the ground. (Morrison-De Soto on Oil & Gas Rights, p. 978.) Plaintiff limited his testimony to this.

The plaintiff's proof established the fact *prima facie* that the well was not "spudded in" until the fourteenth day of April, 1921. No proof was offered as to the preliminary work required before actual drilling was possible, although such evidence constituted a part of the testimony introduced in defense on the former trial. Was the evidence sufficient to make out a *prima facie* case of forfeiture? If so, the court was in error in granting a nonsuit.

The language of a contract governs its interpretation, if clear and explicit (sec. 7539, Rev. Codes 1921), and the words employed are to be understood in their ordinary and proper sense (*Id.,* sec. 7535). Webster defines the word "commence,"

"to enter upon; to begin; to perform the first act of; as to commence a lawsuit"; and "commencement" as the "act, fact or time of commencing." This definition has been judicially approved. (*Bridges* v. *Koppelan*, 63 Misc. Rep. 27, 117 N. Y. Supp. 306, 312.) The word "drill" is defined by the same lexicographer to mean "to pierce; to bore by means of drilling"; and the word "drilling" as the "action of one that drills." "Operation" is defined by Webster in general as the "act, process or effect of operating," the "method or way of operating or working; mode of action or form of activity"; the "state of being operative or in action, as the new railroad will be soon in *operation*"; the "act of operating, or putting into or maintaining in action; as the *operation* of a machine."

The Century Dictionary and Encyclopedia defines the word "operation" as: "A specific act or activity—the course of action or series of acts by which some result is accomplished—the state of being at work, active exercise of some specific function or office; systematic action; as the machine is in *operation*."

In determining the proper interpretation of the word "operate" as used in a statute prohibiting children under sixteen years of age to operate dangerous machinery, it has been held to mean " 'to put in action and supervise the working of, as to operate a machine'; or as 'to put into or continue in operation; to work, as to operate a machine.' " (*Gallenkamp* v. *Garvin Machine Co.*, 91 App. Div. 141, 86 N. Y. Supp. 378, 384; *Id.*, 179 N. Y. 588, 99 N. E. 718, citing the Standard and Imperial Dictionaries.)

It is settled law that the terms of an oil or gas lease are to be construed most strongly against the lessee and in favor of the lessor. (*Daley* v. *Torrey*, 69 Mont. 599, 223 Pac. 498; *Thomas* v. *Standard Dev. Co.*, 70 Mont. 156, 224 Pac. 870, 873.) And in cases of uncertainty * * * the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Sec. 7527, Rev. Codes

1921.) These rules are more especially applicable to oil and gas leases, as quite generally the contract is in form prepared by the lessee. Applying these definitions and rules of construction, we have no doubt as to the proper meaning to be placed on the language used. We are of opinion that the words "commence drilling operations" denote unmistakably the first movement of the drill in penetrating the ground. We think the contracting parties had in mind the "spudding in" of a well as the terms are generally understood in the parlance of those engaged in the exploration for and development of oil.

Authorities cited by the defendant, interpreting language used in such contracts, in effect that the lessee shall "*commence operations* for the drilling of a well for oil*," or "*commence* operations for a test well," or "shall *commence operations*," within a specified time, have no application. In such instances it has been held that work done preliminary to actual drilling constitutes a sufficient compliance with the contract. (*Fleming Oil & Gas Co.* v. *South Penn Oil Co.,* 37 W. Va. 645, 17 S. E. 203; *McCallister* v. *Texas Co.* (Tex. Civ. App.), 223 S. W. 859; *Gonzales* v. *Cowerd,* 78 Okl. 84, 188 Pac. 1055; *Cromwell* v. *Lewis,* 98 Okl. 53, 223 Pac. 671; *Henderson* v. *Farrell,* 183 Pa. 547, 38 Atl. 1018; *Knight Bros.* v. *Standard Oil Co.,* 147 La. 572, 84 South. 653; *Hudspeth* v. *Producers' Oil Co.,* 134 La. 1013, 64 South. 893; *Duffield* v. *Russell,* 19 Ohio C. C. 266; *Terry* v. *Texas Co.* (Tex. Civ. App.), 228 S. W. 1019; Morrison-De Soto on Oil & Gas Rights, p. 84.)

A requirement that the lessee shall "commence operations" within a given time is entirely different from one obligating him to "commence drilling operations for oil." As to the proper construction to be placed on the words "shall commence operations," we do not find ourselves at variance with the decisions of other courts generally, and believe that such a contract is usually satisfied by preliminary work necessary to actual drilling. However, clear distinction exists and

must be recognized between such language employed in a contract, and that which was used in the contract before us.

Let us concede for the moment what is said in the cases cited. An analysis of the terms of the contract before us makes plain the intention of the contracting parties: The lessees agreed to *commence drilling operations for oil and continue to a maximum depth of 2500 feet.* How could this be accomplished save by the operation of a drill in the ground? Surely, timbers and other materials placed upon the ground would not of itself carry out the purpose in contemplation of the parties, *viz.,* to drill for oil to the required depth.

The case of *Fast* v. *Whitney,* 26 Wyo. 433, 187 Pac. 192, cited and relied upon by the defendant, and that of *Terry* v. *Texas Co.* (Tex. Civ. App.), 228 S. W. 1019, are authority for the position taken by the defense, that the words used in the contract, *viz., "commence drilling operations,"* are satisfied where the lessee has erected a derrick or engaged in other necessary preliminary work to actual drilling. These cases are ill considered and treat the words "drilling operations" as no different than if the contract merely required "the commencement of operations" within a specified time. A clear distinction in the meaning of these terms is quite apparent. The Wyoming case was an action for an injunction instituted by the lessees against the lessor to prevent the latter from interfering with the work of the former under a lease. The fact allegations contained in the complaint are wholly different from those in the instant case and acts of estoppel were alleged. It was an action addressed entirely to the equity side of the court. The allegations of fact contained in the petition are clearly distinguishable from the case before us. However, the decision goes no further than to hold that the trial court could not determine "as a matter of law" whether "drilling operations" were begun within the time limit of the contract. The court, speaking through Mr. Justice Potter, said: "We are inclined to doubt there being any reasonable distinction between commencing 'operations' or commencing 'drilling

operations' under a provision in an oil lease for commencing work within a specified time, using either of those terms to describe the work to be commenced. Ordinarily, at least, a provision in such a lease for commencing operations would seem necessary to refer to operations for drilling a well, or, in other words, drilling operations. But, however that may be, we think it immaterial, so far as the present objection to the petition is concerned, whether the work required to be commenced within a limited time is the drilling of a well or drilling operations, for in either case the question whether the facts alleged are sufficient to show that the required work was commenced within said time is essentially one of fact rather than of law.''

The language used denotes clearly the time limit within which the lessee must begin to drill under penalty of a forfeiture. A *prima facie* case of forfeiture was made and the court erred in granting a nonsuit.

Since the case must again be remanded for a new trial, we are required to discuss and determine the merits of other errors assigned.

2. Did the court err in excluding the testimony of Fred J. [5] Gremmert given on the former trial and offered under the terms of a stipulation between counsel, whereby it was agreed that either party to the action should be permitted ''to offer and use in evidence in the case the testimony of any witness upon the first trial of this cause, with the same force and effect as if the said witness were personally present, and so testified in this action; and the said testimony may be offered and read in narrative form as the same appears in the bill of exceptions, in the said case, and the printed transcript on appeal therein.'' Right was reserved to make objection to any of such testimony so offered, ''for irrelevancy, immateriality or incompetency.'' The testimony of the witness so offered is to the effect that he is ''a tool-dresser''; that he worked on the well in question from November 15 to November 30, 1922; that its depth at that time was 2,460

feet; and that it was not then producing oil. This evidence was offered by the plaintiff in proof of further breach of the contract, as respects the requirement that the lessee shall "*diligently prosecute* the work until a well of 2,500 feet in depth is drilled or until oil or gas * * * is discovered in paying quantities at a lesser depth." This offered testimony was challenged as being incompetent. Clearly it is admissible, for it does not require an expert to make such observations or to give testimony with regard thereto. All persons, save those specially excepted by statute, "who have organs of sense, can perceive, and, perceiving, can make known their perceptions to others, may be witnesses" (sec. 10534, Rev. Codes 1921), and a witness is competent to testify respecting facts within his knowledge derived from his own perceptions. (*Id.*, sec. 10506.)

3. In paragraph VII of plaintiff's complaint, as respects [6, 7] damages by him alleged to have been sustained, it is pleaded: "That by reason of the said neglect and refusal of the defendants to execute a release of said lease hereto attached and by the neglect and refusal of defendants to have said lease released of record, *plaintiff has been prevented from making a new lease upon the said premises or any part thereof or from otherwise disposing of the same to plaintiff's damage in the sum of $16,000.*" Under this general allegation of damages, the plaintiff sought to prove that the oil and gas lease upon the plaintiff's land had a reasonable market value between September 10 and October 31, 1922, of $25 per acre, and that on January 22, 1923, the date of the first trial, it had no market value whatsoever. There is no allegation that the plaintiff had endeavored to lease or sell the land, or that he had contracted to lease or sell it, or that he could have done either. The action was commenced October 7, 1922, and by this testimony it was sought to prove generally the reasonable value of such lands for leasing for oil and gas development twenty days subsequent to the service of written demand on the lessee for a release and a few days after the

date the action was instituted. There was no proof or offered evidence that the plaintiff could have leased the lands to any other person, nor that he suffered any special damage in consequence of defendant's failure to discharge the lease of record. If there had been, it would not have been admissible, under the general allegations of damages.

The statute authorizes recovery by the lessor in this action of "the sum of $100 as damages, * * * " and also "any additional damages that the evidence in the case will warrant." (Sec. 6903, Rev. Codes 1921.) This, however, does not mean that the rules of pleading of damages are changed. To *warrant* award of special damages, they must as in other cases be specially pleaded. The plaintiff could recover under the allegations of his complaint only general damages, that is to say, such as the law implies and presumes to have occurred from the wrong complained of, or such as necessarily result. (17 C. J. 1002; *Root* v. *Butte, Anaconda & Pac. Ry. Co.*, 20 Mont. 354, 51 Pac. 155; *O'Brien* v. *Quinn*, 35 Mont. 441, 90 Pac. 166.) Special damages are such as actually result from the defendant's failure to act, but not such a necessary result as will be implied by law. "It is a general rule of pleading that special damages, which are the natural, but not the necessary, result of the injury complained of, must be specially alleged." (*Root* v. *Butte, Anaconda & Pac. Ry. Co.,* supra; *O'Brien* v. *Quinn*, supra.) Nominal damages were proper to be allowed, since the law presumes some damage by reason of a breach of contract. (17 C. J. 720.) Although the damages sought to be proved were of a special character, yet the evidence was admissible under the allegations of the complaint in proof of nominal rather than special damages. The evidence should have been admitted and the jury properly instructed as to its effect.

4. Proof was offered by the plaintiff, through his counsel **[8]** as a witness, that the sum of $2,000 is a reasonable amount to be allowed as an attorney's fee in the action for the preparation and prosecution of the case. It was by the

court excluded. Plaintiff's learned counsel contends the court was in error, as reasonable attorney's fees are specifically recoverable by the plaintiff in such an action by the terms of the statute. (Sec. 6903, Rev. Codes 1921.) It is noteworthy that in connection with the offer of proof submitted, the witness testified that his compensation for services rendered was to be a percentage of the royalties paid on oil produced from the plaintiff's lands. The amount of such percentage is not shown or attempted to be shown, nor is there proof or offered proof as to its value.

Question as to the constitutionality of that portion of the statute providing for the allowance of a reasonable attorney's fee is presented. The question having been raised by the exclusion of offered evidence, which is assigned as error, and decision thereof being necessary to a proper disposition of this appeal, we are constrained to hold that portion of the statute a nullity. This statute denies equal protection of the laws contrary to the Fourteenth Amendment to the Constitution of the United States. (*Gulf, S. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150, 41 L. Ed. 666, 17 Sup. Ct. Rep. 255 [see, also, Rose's U. S. Notes].) The statute cannot be justified as a proper exercise of the police power of the state, as contended by plaintiff's counsel, as it is merely a remedy afforded for the enforcement of private contracts. The decisions of this court are uniform subsequent to the decision in the case of *Wortman* v. *Kleinschmidt,* 12 Mont. 316, 30 Pac. 280, in holding like statutory provisions void. Cases on the subject are collected and discussed at length in *Mills* v. *Olsen,* 43 Mont. 129, 115 Pac. 33, and *Dewell* v. *Northern Pac. Ry. Co.,* 54 Mont. 350, 170 Pac. 753. The statute is remedial in its operation, and in so far as it purports to allow the recovery of reasonable attorney's fees is not reciprocal, and for that reason and to that extent it is unconstitutional. The court was right in excluding the offered testimony.

The judgment is reversed and the cause remanded to the district court of Toole county for a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY: I concur in the foregoing opinion except as to division 1, in which much is said that is unnecessary and also much that is wrong, in my judgment.

I do not care to waste the time nor to occupy the space required for a dissenting opinion; whether a dissenting opinion ever is useful seems to be a mooted question.

I agree that plaintiff showed *prima facie* that on March 19, 1921, drilling operations had not been commenced as was required by the terms of the lease, and that the court erred in taking the case from the jury.

Motions for rehearing filed by both parties denied April 24, 1925.