

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

Gerald C. Mann
XXWXXXxXXXXXXXXX
ATTORNEY GENERAL

*overruled by V-1567 where conflicts*

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-3698

Re: Construction of Article 16,
House Bill No. 8, Forty-
seventh Legislature, with
reference to whether or not
services performed in a "dry
hole" are subject to the tax,
and whether or not certain
particular services are taxable.

This is in answer to your request for our opinion in regard to Article 16, House Bill No. 8, Forty-seventh Legislature, which imposes a tax on the furnishing of certain oil well services. Your request embodies several questions, and reads in part as follows:

"1. The question has been raised that services taxable under this Article would only be taxable in wells drilled which ultimately produced oil or gas, and that services performed in wells which proved dry or non-productive of oil or gas would not be subject to this tax. Please tell me whether or not services performed in wells which are being drilled for oil and gas, which ultimately proved dry and non-productive, would be subject to this tax?

"2. There is performed in connection with the 'testing of the sands or other formations of the earth' a service known as 'side wall sampling.' This is the use of a power propelled hollow bullet fastened to the gun by a wire so that when drawn to the surface it will yield a small core of the earth taken from the side of the uncased drill hole.

Please tell me whether or not the service would be subject to this tax?

"3. There is performed in drilling for oil and gas, a service known as 'water locating.' This becomes necessary when a water bearing formation is drilled through or into, and the exact location

of this formation must be known. In the instrument used in this service the mud in a well is permitted to pass between a light source and a selenium cell while the instrument is lowered into the well. When it passes through clear water, the cell reacts and records the location of the water intrusion. Please tell me whether or not this service would be subject to this tax?

"4. There is performed in drilling for oil and gas a service known as 'temperature determination.' By lowering into the well an electrical resistance thermometer and recording at the surface in the form of a graph all its readings, the temperature of the entire length of the well is available. By deduction from the known cooling effects of flowing gas, the less cooling effects of flowing oil, the heat generative effects of hardening cement, the following results are made possible:

"a. Location of oil and gas bearing formations and differentiation between the two.

"b. Location of cement top behind the casing.

"c. Determination of the base of the gas to permit the casing to be set at the proper depth.

"Please tell me whether or not this service would be subject to this tax?

"5. There is performed in drilling for oil and gas a service known as 'depth determination.' By measuring with cable of known length the following can be determined: depth of bottom plug; location of parted casing; and, location of fish (by 'fish' is meant the object or tool lost in the well which must be 'fished out.') Please tell me whether or not this service would be subject to this tax?

"6. There is performed in drilling for oil and gas a service known as 'dip surveys.' This is the determination of the direction and roughly the extent of the dip or departure from the horizontal plane of the strata penetrated by the drill by measuring their electrical conductivity. Please tell me whether or not this service would be subject to this tax?

The answers to your questions depend on the construction to be placed upon paragraph (b), Section 1, of said Article 16, House Bill No. 8, which reads as follows:

"(b) Every person in this State engaged in the business of furnishing any service or performing any duty for others for a consideration or compensation, with the use of any device, tools, instruments or equipment, electrical, mechanical, or otherwise, or by means of any chemical, electrical, or mechanical process when such service is performed in connection with (1) the cementing of the casing seat of any oil or gas well or (2) the shooting or acidizing the formations of such wells or the surveying or testing of the sands or other formations of the earth in any such oil or gas wells, shall report on the 20th of each month and pay to the Comptroller, at his office in Austin, Texas, an occupation tax equal to two and two-tenths (2.2) per cent of the gross amount received from said service furnished or duty performed, during the calendar month next preceding. The said report shall be executed under oath on a form prescribed and furnished by the Comptroller."

We have heretofore held that "this is a tax on service furnished or or duty performed" and that "the persons taxed are those persons 'furnishing any service or performing any duty . . . when such service is performed in connection with'" certain oil and gas well operations. (See Attorney General's Opinion No. 0-3627, dated June 27, 1941.)

Whether or not the tax accrues and becomes due does not depend on oil or gas being ultimately produced in the well. The services taxed are those "performed in connection with the cementing of the casing seat of any oil or gas well or the shooting or acidizing the formation of such wells or the surveying or testing of the sands or other formations of the earth of any such oil or gas wells;" and, according to the terms of the statute, the tax is measured by the gross amount received from said service furnished and is payable the 20th day of each month following the month said gross amount is received. It is a well known fact that sometimes it takes several months to drill an oil or gas well. Some of the services taxed under this statute, such as the cementing of the casing seat, are occasionally performed and the money paid for said services a month or two before oil or gas is discovered; and, according to the provisions of the statute, the taxes on said services measured by the payment of said money would be payable the 20th of the following month, even though oil or gas had not been discovered. We do not believe that it was

intended by the Legislature that the concern who performed one of said services on a well in the process of being drilled is entitled to hold up the payment of the taxes until oil or gas shows in the well, but we feel that it was intended that said concern pay the taxes on the 20th of the month following the month in which the payment of the money was made. Such is the provision of the statute. There could very likely be instances where taxable services on an oil or gas well would be performed and paid for before oil or gas was discovered, and then because of financial difficulties or other reasons the drilling of the well would be suspended for a year or more. The words of the statute do not indicate that the payment of the taxes on said service performed would be suspended. We believe that when the Legislature referred to an "oil or gas well" in this statute it had reference to any well which was being drilled for the purpose of discovering oil or gas. The court placed such a meaning on the term "oil well" in construing a contract in the case of Brown v. Homestake Exploration Corporation, 98 Mont. 305, 39 Pac. 2nd 168, in which the court said:

> "It is argued that an 'oil well' means a well which produces oil, and that the drilling of a well seeking the discovery of oil is not an oil well; and hence the covenant is only operative after the discovery of oil.
>
> "The words of a contract are to be understood in their ordinary and popular sense, unless used in a technical sense. Section 7335, Rev. Codes 1921; Solberg v. Sunburst Oil & Gas Co., 73 Mont. 94, 235 p. 761. An 'oil well' is defined as a 'well or boring for petroleum.' Funk & Wagnall's Dictionary. 'A boring made for petroleum.' Century Dictionary.
>
> "* * * Perhaps, technically, a well is not an oil well until the discovery of oil is therein made; but, in common parlance, any well which is drilled for the purpose of discovering oil (petroleum) is an oil well, although no oil may be found therein."

Our answer to your first question is that the taxability of services performed on a well being drilled for oil or gas does not depend on whether oil or gas is ultimately discovered in said well.

The remainder of your questions are concerned with that part of the statute which refers to "surveying" or "testing of the sands or other formations of the earth of . . . oil or gas wells." The tax is on service furnished "when such service is performed in connection with" certain oil and gas well operations. Two of those operations are (a) "surveying" and (b) "testing of the sands

or other formations of the earth of . . . oil or gas wells." The answer to your remaining questions depends on whether or not the acts about which you ask constitute "surveying" or "testing" or are done in connection with "surveying" or "testing."

Surveying of oil and gas wells is explained in "Petroleum Production Practice," Part I, by F. B. Plummer, 1939, Section 24, as follows:

> "Purpose of Survey: Drill holes are surveyed for the following purposes: 1. To determine deviation from vertical. 2. Direction of deviation. 3. Temperature of the bottom of the hole. 4. Temperature gradient; i.e., rate of increase of temperature per unit of depth. 5. Electrical conductivity and resistivity of the strata in the hole in order to distinguish and locate highly electrical resistive layers such as dense marls, dense limestones, coal beds, etc., and distinguish these from electrical potential between mineral water bearing and non-mineral water bearing layers in order to establish the position in the hole of formation contacts and the content and character of the porous layers."

See also "Elements of the Petroleum Industry," edited by E. DeGolyer, 1940, pages 161 to 180, and "Surveys of Well Wanderings Aid to Engineers," by Alexander Anderson, Oil Weekly (Apr. 19, 1929).

Testing of the sands or other formations of the earth of oil and gas wells is the taking of samples of the earth formations and fluid contents from the walls or the bottom of the well and analyzing the same so as to ascertain the composition of said earth formations and fluid contents. See "Fundamentals of the Petroleum Industry," by Dorsey Hagar, 1939, pages 226 to 231, and "Drilling Practices," by Charles Cyrus, 1939, pages 182 to 195. One method is known as "drill-stem testing," by which samples are taken from the bottom of the well through a device attached to the drill stem. See "Use of Recording Pressure Gauges in Drill Stem Tests," by R. S. Christie, Oil and Gas Journal (June 18, 1936) Another method is known as "coring," by which a core or sample of soil or other formation is taken from the wall or the bottom of the well by a special coring device and removed to the surface, and then analyzed as explained in "Elements of Petroleum Industry," pages 186 and 187, supra, as follows:

> "* * * Upon removal, the core is laid out on a flat surface
> in the same position it held in the core barrel, so that the
> amount of recovery and formation depths can be determined.

> By visual examination, the geologist then makes a detailed
> description of the core. Sand cores are further tested by
> taste or smell to determine the presence of oil, gas or wa-
> ter. If the core shows oil, a field saturation test with ether
> is usually made to determine the percentage by volume of
> oil present in the core. After the geologist has completed
> his field examination, cores are usually sacked or boxed for
> shipment to a paleontological laboratory for analysis. For
> accurate determination of porosity, permeability, percentage
> of connate water and oil saturation, the cores are immediate-
> ly coated in paraffin or sealed in a container upon removal
> from the core barrel and shipped to the laboratory."

We will not take up your second question, which concerns "side wall sampling." This is clearly a modern method for securing samples for "testing the sands or other formations of the earth of . . . oil or gas wells," which is one of the taxable operations. Any service done "in connection with" one of the taxable operations is a taxable service. Our answer to your second question is that the service of taking cores of earth from the walls of an oil or gas well by means of the device you describe for the purpose of examining and analyzing said cores is a taxable service.

We will now take up your third question, which concerns "water locating." It is sometimes highly important that the driller of a well locate at what levels water is coming into the well in order to shut off the water by the proper use of casing and cement. In our opinion the process by which the point where water comes into the well is ascertained constitutes a survey. In fact such processes are referred to as "surveys" in the written articles by experts on this subject. In an article entitled "Photoelectric Cell is Applied in Locating Water Intrusions," by H. Guyod (Chief Engineer of the Schlumberger Well Surveying Corporation), in the Oil & Gas Journal (June 10, 1937), the water locating method you ask about is described, and in explaining the actual example of the use of said method the author in that article used this language:

> "A water-flow <u>survey</u> was made and the water was found to
> be entering around the lead plug at 4,198 feet." (Underscoring
> ours)

See also "Locating Water Source is Initial Step in Making Well Repairs," by C. R. Dale and H. Guyod, Oil & Gas Journal (November 18, 1937). Our answer to your third question is that the service of "water locating" by the means you ask about is a survey within the meaning of the statute and is therefore a taxable service.

We will now take up your fourth question, which concerns "temperature determination." Ascertaining the temperature in the various parts of the well is clearly a form of survey, according to the definitions of well survey. See "Petroleum Production Practice," Part I, supra. In a booklet entitled "Schlumberger Auxiliary Services," recently published by Schlumberger Well Surveying Corporation, on page 2, is a discussion of "temperature determination" in wells, and the discussion is headed "Temperature Surveys" and reads in part as follows:

> "It has long been realized that the study of temperature in a drill hole could be of great value if it could be accurately and practically measured . . .

> "In the last few years an electrical-resistance thermometer has been devolved which responds to temperature variations rapidly and records them within 0.2 degrees Fahrenheit of accuracy. This thermometer is lowered into the well at the end of the insulated cable used for electrical logging and all temperature readings are recorded at the surface, in the form of a continuous graph.

> "The most profitable purpose served by this type of temperature survey is the location of oil and gas bearing formations in limestone. In West Texas and Kansas this has been accomplished in several hundred temperature surveys which, in conjunction with electrical logging, located the pay and differentiated between oil and gas." (Underscoring ours)

Our answer to your fourth question is that the service of "temperature determination" in the manner you describe is a survey within the meaning of the statute and is therefore a taxable service.

We will now take up your fifth question, which concerns "depth determination." This operation consists of locating the depth in the well of certain objects or parts of the well equipment, and it clearly comes within the definition of a survey. See "Elements of the Petroleum Industry," pages 161 to 171, supra. Our answer to your fifth question is that the service of "depth determination" described by you is a survey within the meaning of the statute and is therefore a taxable service.

We will now take up your sixth question, which concerns "dip surveys." This operation consists of ascertaining the angle, slope and direction of the formation traversed by the drill hole, and we believe that it clearly comes within the meaning of the word "survey" in the statute. In fact the name by which the process is known, to-wit, "dip survey," shows that it is a form of survey. In the booklet entitled "Schlumberger Auxiliary Services," pages 8, supra, this process is described and referred to in the heading as "surveys." Our answer to your sixth question is that the service of "dip surveys" described by you is a survey within the meaning of the statute and is therefore a taxable service.

We hope that the foregoing has answered your six questions.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Cecil C. Rotsch*

Cecil C. Rotsch
Assistant

APPROVED AUG 7, 1941

*Grover Sellers*

FIRST ASSISTANT
ATTORNEY GENERAL

CCR:EJ

APPROVED
OPINION
COMMITTEE

By *B. B.*
Chairman